JUDGE ROBERTSON
delivered the opinion op the court:
On the 18th of July, 1859, the appellant, Worthen, sued the appellee, Wm. Hutcheson, and Thomas McClure, his tenant, for about five hundred and sixty-five acres of land, occupied by them under a Kentucky patent issued to Hutcheson May 22d, 1849, on county court certificates, under the statute of 1835, authorizing such appropriations of vacant lands for the benefit of the counties respectively including them.
Worthen claimed in severalty, under his ancestor, Samuel McMillan, deceased, and his original action was by petition ordinary ; but apprehending that his several title *614 had not been perfected, he made all the heirs of Samuel McMillan co-plaintiffs, and thereon the suit was transferred to the equity docket, and was prosecuted in equity until it was, years afterwards, dismissed by the judgment of the circuit court, as not maintainable in that forum.
The appellants, heirs of Samuel McMillan, claim two thousand acres (including the land in controversy), under a patent issued to Josiah Watson, January, 1850, on a recorded survey of four thousand acres made March 17th, 1784, on Virginia treasury warrants; a sale and conveyance of two thousand acres thereof by said W'atsoH, made November 22d, 1794, through John Taylor, as his agent, acting under a written power of attorney, and continuous adverse possession for more than thirty years before the appellee, Hutcheson, entered thereon.
Hutcheson denied that the title of the appellants was more than an unavailable equity, and insisted that Taylor’s sale and conveyance were not authorized by Watson, and that, even if it was, it passed only an equity, which never matured into a legal title in the appellants. He cannot, therefore, now object to the jurisdiction of a could of equity, and especially as this case was consolidated with a suit in equity for the consummation of a partition among' the appellants, and as such long and elaborate preparation was made by both parties after the translation to the equity docket of the court; and it was certainly too late to dismiss the case for want of equity jurisdiction. We must, therefore, inquire whether the appellants established a right to recover the possession from the appellees.
To relieve the case of some confusion, we will first consider the title, and define the legal attitude of the appellee, Hutcheson, the extent and effect of whose oc *615 cupancy depend on the character of his documentary title.
The law under which Hutcheson made his survey and obtained his patent only authorized the appropriation of “vacant land,” and, in that respect, was like the act of 1815; and, consequently, an appropriation under either of those laws of land either occupied or previously appropriated by the patent or survey of another, was alike illegal. But, in another and radical particular, these statutes differ — that of 1815 declaring only that the title of the intruder should be “ inferior ” to that of such preoccupant or appropriator; and that of 1835 declaring it “void” by the following provision: “That no location or appropriation of land whatever under this act shall prevail against any actual settler, including to his boundary, whether the actual settler has any title in law or equity from the Commonwealth or not, provided he has a deed or bond for the land; and every survey and patent which interferes with the settlement or boundary of any actual settler shall be void; and any survey or patent made or issued under this act, which interferes with any survey or patent heretofore made or issued, shall be null and void.”
There being no legal authority under either of these enactments to survey or grant land already appropriated, and, therefore, not “ vacant,” the illegal appropriation is intrinsically invalid. The act of 1815, however, virtually declared that it should not be void, but only inferior ; but the act of 1835, declaring it void, used language which could not be misinterpreted by those who often use and construe void as synonymous with voidable; and, to leave no subterfuge for such misinterpretation, and show that the word Amid was used in its technical and true philological sense of nullity, it prefixed “null” and said “ null and void.”
*616 As a patent is a species of record, it is a general rule, that, when it does appear void on its face, it can only be avoided by a direct proceeding in the nature of a scire facias. But reason, as well.as Kentucky judicial authority, excepts from this rule patents declared void by statute ; and, consequently, it has been consistently settled by the judiciary of Kentucky, that, in all such cases, the legal nullity of the patent may be shown collaterally by extraneous proof of the fact that annulled it.
In Ray vs. Barker's heirs (1 B. Mon., 368), this court said: “ The doctrine has become too firmly fixed, by the repeated adjudications of this court, now to be shaken, that when the Legislature has, by statute, declared a patent void, which issues contrary to its enactment, the facts necessary to show that it issued contrary to the statute, and is, therefore, void, may be established by parol and other proof dehors the patent, and, when established, will defeat a recovery upon it.” And the following citations are appended: Dallam vs. Handley, 2d Mar., 418; Atchley vs. Latham, 2 Littell, 362; Jennings vs. Whitaker, 4 Mon., 51; Pearson vs. Baker &. Asbell, 4 Dana, 322; and Cane vs. Flynn, Ib., 501.
As confirmatory authorities we subjoin Taylor vs. Fletcher, 7 B. Mon., 82, and Clark vs. Jones, 16th Ib., 126, and might cite other decisions in which the same doctrine has been incidentally recognized.
Consequently, it appearing in this case that the land surveyed and patented to Hutcheson was then occupied under Watson’s survey, Hutcheson has no documentary title, his survey and patent being utterly and absolutely “ null and void.” He stands, therefore, in this contest, just as he would had he never procured a survey or patent; and as he has had no title derived from the Commonwealth, the limitation of seven years for the *617 protection of actual settlers under any such title does not apply to his settlement under his void patent, which conferred no right or title, and placed him in no better or more meritorious condition than a settler without any documentary claim; for when he made his location he knew that he was intruding on the possession of McMillan and the survey of Watson.
He has not established any adverse and continued possession for twenty years; and if he had, as it was without title, it could not have evicted McMillan’s antecedent and continued possession beyond his actual inelosure, which is neither defined as existing twenty years nor shown to have been so long.
McMillan’s actual possession, constructively coextensive with his claim for more than thirty years, is abundantly established; and this alone proves a right of entry in the appellants. But their possessory is not their only title. Watson’s patent conferred the only legal title, and they hold under that patent which passed the legal title to them by relation, if Watson’s conveyance was valid and binding, and transferred to their ancestor his equitable right; and that it was valid and passed his equity, we cannot doubt.
The agent did not transcend his authority to sell and convey by general warranty the constituent’s lands, of which he was “ seized” in Kentucky. Seisin, in its technical sense, is actual or constructive possession under a perfect legal title; and, according to the decision of this court in Speed vs. Buford, it includes, as an essential element, an actual entry also. Watson being a non-resident, and not shown to have been in Kentucky, or to have been even the patentee of any land here as early as 1794, when he gave the power of attorney, it would seem absurd to assume that he meant by the word “ seized” more than *618 possessed or entitled to in law or in equity; and we must presume that he used the term in that, its popular import; nor was the agent’s conveyance voidable by Watson for binding him by a less extensive warranty than the power might have authorized.
Moreover, these objections by appellee’s counsel are effectually answered by unquestioning acquiescence for seventy years.
From the foregoing, which we consider the only maintainable conclusions from the law and the facts of this case, the inevitable result is, that, either on the possessory or the documentary title, and more especially on both united, the appellees, as heirs of Samuel McMillan, deceased, are entitled to recover all the land involved in this litigation, to be allotted among them according to their respective rights as between themselves.
Wherefore, the judgment is reversed, and the cause remanded for a judgment of eviction conformable with this opinion.