CASE 73—PETITION EQUITY—SEPTEMBER 30.

## Bull, &c., v. Kentucky National Bank.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. TRUST ESTATE SUBJECT TO DEBTS OF BENEFICIARY.—Where there is a beneficial interest in property that interest may be subjected to the debts of the beneficiary; but a provision in a will that the interest of the beneficiary shall vest in another in the event it is decided by a court of last resort that it may be subjected to the payment of his debts will be enforced; and after such an adjudication the beneficiary first named will no longer have any interest, and there will be nothing, therefore, that can be subjected to the payment of his debts.

A testator devised property to a trustee, with direction to the trustee to pay the rents and profits to his son for life, but in the event it should be decided by a court of last resort that said rents and profits were liable to be subjected to the debts of the son, then the trustee should thenceforth pay such rents and profits to the wife of the son for her separate use. In this action by creditors of the son to subject the profits: *Held*—That the creditors are entitled to the rents only up to the delivery of this opinion.

2. FINAL ORDER.—As the judgment appealed from takes the estate from the trustee for the purposes of the trust, and applies it to the pay-

Bull, &c., v. Kentucky National Bank.

ment of the son's debts, it is such a final order as may be appealed from, although the question as to how the judgment shall be enforced is reserved.

CARY & SPINDLE, RICHARDS & HARRIS FOR APPELLANTS.

1. Trust estates were not liable to execution at common law. (Freeman on Executions, 187; Thomas v. Marshall, Hardin, 19; Allen v. Saunders, 2 Bibb, 94.)

2. By statute in Kentucky estates of every kind held in trust are subject to the debts of the person for whose benefit they are held. (Morehead & Brown, p. 443; Gen. Stats., chap. 63, art. 1, sec. 21.)

3. The right of alienation and the liability to debts are necessary incidents of freehold estates, and a clause restricting this right or liability is void. (Brandon v. Robinson, 18 Ves., 429; Nichols v. Eaton, 91 U. S., 721; Broadway Bank v. Adams, 133 Mass., 170; Lampert v. Haydel, 20 Mo. App., 616.)

4. The creator of an estate may, by a condition or limitation, take it away from the donee in the event of alienation or subjection to debts, and give it to somebody else. (Story's Eq. Jur., 9 ed., sec. 974; Lewin on Trusts, chap. 7, sec. 2, page 190, ed. of 1888; Jarman on Wills, edition of 1858, side p. 135; Perry on Trusts, sec. 388; Marshall v. Rash, 87 Ky., 119; White v. Thomas, 8 Bush, 661; Bramfell v. Ferris, 14 N. Y., 41; Oldham v. Oldham, L. R., 3 Eq. Cas., 404; Billison v. Crofts, L. R., 15 Eq. Cas., 314; Nixon v. Verny L. R., 29 Ch'y, 196; Hurst v. Hurst, L. R., 21 Ch'y, 278.)

JOHN C. RUSSELL ON SAME SIDE.

1. A limitation over to take effect upon the decision of a court that the income may be subjected to the debts of the first taker is valid. (Nichols v. Eaton, 91 U. S., 722; Bramhall v. Ferris, 14 N. Y., 41.)

   It can be no objection to the limitation over that it is dependent upon the decision of a court *of last resort,* as such a limitation is wiser and better than a limitation dependent merely on the decision of a court.

2. A provision by which the wife takes the forfeited estate upon the happening of a certain contingency is not void merely because the testator does not go further and make a disposition of the forfeited estate in the event the husband should outlive the wife.

H. L. STONE FOR APPELLEE.

1. Wherever there is a beneficial interest in property, it is liable for the debts of the beneficiary under our statute, notwithstanding a provision in the deed or will under which the interest is held attempting to restrict such liability. (Marshall, Trustee, v. Rash, &c., 87 Ky., 116; Parsons v. Spencer, 83 Ky., 305.)

Bull, &c., v. Kentucky National Bank.

And this is true independent of statute. (Nichols, Assignee, v. Eaton *et al.*, 91 U. S., 716; Bramhall v. Ferris, 14 N. Y., 41; Gray's Restraints on Alienation, secs. 211, 254, 255, 257, 258, 262; Broadway Bank v. Adams, 133 Mass., 170; Keyser's Appeal, 51 Pa. St., 236; Rhodes v. Muswell Hill Land Co., 29 Beav., 564; Mallett v. Smith, 60 Am. Dec., 109.)

The case of White v. Thomas, 8 Bush, 661, explained.

The attempt on the part of the testator in this case to divest the beneficiaries of their interest in the estate devised upon the decision of a court of last resort that it is subject to their debts is not effectual to defeat the rights of creditors. The life estate devised to the first taker is not entirely disposed of on the happening of the contingency. If the contingency occurs when the wife is not living, or if she should subsequently die, or be divorced, the husband remains entitled to the estate, and there is no divestiture of the whole estate devised to the first taker. Besides, the contingency is too remote, uncertain and indefinite to work a forfeiture.

2. A devise of the rents and profits of land for life is in substance an appropriation of the land itself for life. (Williamson v. Williamson, 18 B. M., 383; Bowles v. Winchester, 13 Bush, 13; Ball v. Hancock's Adm'r, 82 Ky., 112; Woolley v. Preston, *Idem*, 423.)

3. So much of the judgment appealed from as adjudges to appellee a lien on the equitable interests attached is not final, and, therefore, not appealable. (Bondurant v. Apperson, 4 Met., 390; Hanson v. Bower, *Idem*, 108; Bank of Ky. v. Allen, 8 Ky. Law Rep., 36.)

HARGIS & EASTIN IN PETITION FOR REHEARING.

At any time before the opinion was delivered Ed. and Robert Bull had the power to alienate their life estate, and, therefore, the devise over can not take effect, all the cases holding that a devise over is void where the power of alienation exists at any time under the will. (Kent's Com., vol. 4, p. 270, 13th ed.; Jones v. Bacon, 68 Maine, 34; McKenzie's Appeal, 41 Conn., 607; Rona v. Meier, 47 Iowa, 607; Kelly v. Means, 135 Mass., 231; Howard v. Carusi, 109 U. S., 105; Attorney-General v. Hall, Fitzg., 314; Ross v. Ross, 1 Jack. & Walker, p. 154; Jackson v. Bull, 10 Johnson Ch'y, 18; Nelson v. Cooper, 4 Leigh, 408; Gifford v. Choate, 100 Mass., 343, 468; Ramsdell v. Ramsey, 31 Maine, 288; Perry on Trusts, vol. 1, § 386, 386a; Story's Eq. Jur., sec. 974a; Williams on Executors, p. 1374; Dick v. Pitchford, 1 Dev. & Bat. Eq., 480; Palmer v. Stevens, 15 Gray, 343; Mandlebaum v. McDonald, 29 Mich., 78; Hardenburg v. Blair, 30 N. J. Eq., p. 43; and 3d Stewart; Mitchell v. Reynolds, 1 P. W., 189; Carey v. Burtley, 2 Vern., 339; Taylor v. Sutton, 15 Ga., 103; Martin v. Ballou, 13 Barb., 119; Merrifield v. Cobleigh, 4 Cush., 178; Codberry v. Shepherd, 27 Miss., 203.)

Bull, &c., v. Kentucky National Bank.

P. B. MUIR IN PETITION FOR REHEARING.

The testamentary provision upon which appellants rely is either void or else it must be construed to mean that the estate is subject to all debts contracted anterior to the decision of the court of last resort, but not to debts contracted thereafter. The latter would establish consistency in the will, promote a sound public policy, and give effect to our statute, while any other construction leads to inconsistency in the will, involves the court in a wretched solecism, encourages "spend-thrift trusts," so often denounced by this court, and sanctifies a miserable evasion of the statute. (Marshall's Trustee v. Rash, 87 Ky., 116; Samuels v. Ellis, 12 B. M., 479; Pope's Ex'rs v. Elliott & Co., 8 B. M., 56.)

Cases explained: Nichols v. Eaton, 91 U. S., 256; Brandon v. Robinson, 18 Ves. Jr., 434.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

These consolidated actions were heard together, and a judgment rendered for the bank. The defense re-lied on by the appellant is, that the bank (appellee) agreed that new notes should be executed for the old notes then owing, and that William Cromey's name as an individual indorser should be substituted in lieu of his name as executor and trustee of Bull's estate, thereby releasing the estate of Bull from any and all responsibility upon the paper. This new paper was executed in January of the year 1886, and was given, as defendants allege, for the purpose of releasing the liability of the trust property, and making Cromey individually liable, when, in fact, the defendants say the bank, in violation of its agreement, entered into an arrangement with the trustee, unknown to them, by which his liability as such was still continued, re-gardless of the arrangement under which the new notes were executed—the same now in controversy. They, therefore, deny the right of recovery.

The agreement or consideration for the renewal of

these notes is established by Mrs. Bull and her sons, but denied by both Fetter, the president of the bank, and by Cromey, the trustee, who, in substance, say that the entire arrangement, including that fixing the liability of the trustee, was made at the instance of the appellants. The appellants were the principal obligors in the greater part of this large indebtedness, and it is unreasonable to believe that the bank would release solvent parties to obtain as an indorser or security one who was insolvent. The evidence, however, is conflicting, and the chancellor, in our opinion, ruled properly on that branch of the case. The testimony shows that the notes originally discounted by the bank were for the benefit of one or the other of the parties to them. The bank parted with its money in good faith, and to those who are now parties to the renewal paper. The loans may have been large and unusual, but, in the absence of fraud or bad faith on the part of the appellee, the liability of the parties to the paper can not be questioned, and the right of the appellee to come into a court of equity after exhausting the remedy at law for the purpose of obtaining relief is equally plain.

The important question, and the only one necessary to be considered, arises from the will of John Bull, in that part of the devise to each of his sons, by which it is provided that the rents and profits of the estate devised shall not be subject to the claims of any creditor. Under our statute, construed by repeated decisions of this court, it has been held that where there is a beneficial interest in property, that interest may be subjected to the payment of the debts of the beneficiary.

In the recent case of Bland's Adm'r v. Bland, decided at the present term [*ante*, p. 400], the interest of the devisee was held to be liable upon the ground that the provisions of the will attempted to exempt the estate or its rents and profits from being subjected to the payment of the debts of the devisee, and at the same time vesting in the devisee the absolute power of disposing of the whole estate as he might deem proper. That was a case in which the benefits of the rents and issues were taken from the devisee and added to the principal, with the power given the devisee to dispose of it by will as he pleased. It is said in the opinion in that case that the profits or income of the estate was not, in fact, forfeited by reason of the attempt by the creditor to subject it, but only added to the principal, thus enlarging the estate, the disposition of which was left alone to the beneficiary if he saw proper to devise it. That being invested with such a title, to hold that the devisee had no interest is contrary to the plain provisions of the will.

In the case before us the testator devised certain specified property to his two sons, to be held in trust by his executor, and to be controlled by him during the life-time of Edward and Robert (the sons), the executor to pay in quarterly payments the net proceeds of the rents and profits to the beneficiary. Following this devise to Edward and a like devise to Robert is this provision: "The said property shall not be, in any manner, encumbered by, nor shall it or its rents or profits be in any way anticipated by, or in any way subjected to, the debts of my son Ed-

ward, either by process of law or by any order, assignment or contract he may make; and should it at any time be held by a court of last resort that said rents and profits are liable to be subjected to the debts of Edward, or liable to be anticipated or encumbered by him, then, in that event, I direct that my executor shall thenceforth pay the rents and profits of said property to the wife of said Edward for separate use, free from the debts or control of her said husband.''

The feature distinguishing this case from that of Bland v. Bland is, that in the case of Bland the devisee was never divested of his interest or deprived of his title, but was, in fact, given such an absolute estate as to exclude the idea that he was not in every sense a beneficiary. Here the use, and we might say the life estate, ceases in Edward and becomes vested in his wife; so there is no estate in Edward for either himself or his creditor, and as the devisor (his father) had the power to make such a limitation or create the defeasance when disposing of his own estate, neither Edward nor his creditor can complain. Equitable life estates, or a beneficial interest in the debtor, can not escape subjection to the payment of his debts. But here he had no estate, because the devisee becomes divested by the very terms of the will that neither misleads nor deceives the creditor, who is trusting the beneficiary in the business transaction.

It is said, however, the corpus of the estate is in Edward, and the rents or profits vested in his wife. The estate is in the trustee, with the right of Ed-

ward to the rents, to be paid him by the trustee as they become due, and upon the condition expressed in the will of his father. When you take from the principal devisee the use or enjoyment of the income, (and this is all he is entitled to), nothing remains of the estate for him. There is no estate left in Edward that a chancellor can reach, or to which Edward could assert any right after the happening of the event by which he is divested of title and his wife becomes entitled to the rents and profits. It is argued that this is a mere evasion of the statute by which it is provided that "estates of every kind held or possessed in trust shall be subject to the debts and charges of the persons to whose use or for whose benefit they shall be respectively held or possessed," &c., and that no such device should receive the sanction of this court. That it was the purpose of the testator that his sons should use and enjoy the property devised to them unmolested by any creditor is apparent, but this affords no reason for disturbing the provisions of his will on this subject, if, by its terms, their equitable interest has passed to others. It is a mistaken idea to say that the devise gave to the sons an equitable life estate in this property, or in the rents and profits, as by the provisions of the will under which this title is passed to the sons they are to become divested of the title upon a certain contingency. The testator was not required to anticipate the extravagance of the beneficiaries of his bounty so as to provide for those who might thereafter become their creditors; but, on the contrary, the property devised belonging to him, he had the right, and it was his

duty, to secure the sons, and particularly their families, against such a reckless use of their property as might reduce them to want. There is nothing in such a provision as affects a sound public policy, or makes this devise of the testator superior to the law of the land.

The testator might as readily have devised the estate in the first place to the wives of his two sons, or any they might thereafter have, in order to preserve it for their families, and the argument would then be used that this was done merely to enable the wives to hold the property that his sons might enjoy it, and still the devise would be upheld. Counsel seem to have overlooked the fact that this was the testator's own property he was disposing of, and not his sons, and argue as if the testator had no power to annex a condition to the devise that might terminate at once all interest the sons had in the property. It is said that there is no authority or precedent to be followed in this case, but after a careful examination of a number of cases we find the right of a testator to make such a disposition of his estate fully sustained, and have failed, by reference to the authorities referred to by counsel for the appellees, to find any single case in which their view of this question is maintained. Some of the authorities go to the extent of holding that the interest and dividends of real or personal property held in trust may be enjoyed by the beneficiary without liability for his debts. (Nicholas v. Eaton, 91 U. S., 716)

This court has held the contrary doctrine, but has never gone so far as to adjudge that the beneficiary

might not lose his estate upon the happening of a contingency provided by the terms of the trust. A testator can not vest the title in a trustee for the use of another, and prevent its enjoyment by the *cestui que trust* without subjecting it to the debts of the latter. This is the rule in this State, and the doctrine recognized in this case is not inconsistent with it. While the trustee holds the property for the use of the debtor he holds it subject to the claims of his creditors, but where the property, or its profits, is to be applied to the use of the beneficiary (the debtor) for a limited period, or until the happening of a certain event, when the title or the entire profits is to vest in another, then the right of the creditor to subject it for the debt of the first taker is gone. The testator provides "that if, at any time, it should be held by a court of last resort that said rents and profits are liable to be subjected to the debts of Edward, or liable to be anticipated or encumbered by him, then, and in that event, I direct my executor to pay the rents and profits of said property to the wife of Edward for her separate use, free from the debts or control of her husband." Why should the executor hold the rents and profits any longer than the event contemplated by the testator? The will provides that he shall not, and the credit given the devisee is based on the title acquired under the will of his father. If he had a life estate, or was entitled to the rents and profits for life, without any condition or limitation as to his right, the property could be subjected and the claims of the creditor enforced; or, if any income was in the hands of the trustee

that the beneficiary could demand paid over to him
as a matter of right, to that extent the creditor would
obtain relief, as in this case the income and profits
were due and payable to the appellant up to the
time he was divested of title, and the chancellor
could subject it. It may be proper to consider the
authorities, English and American, on this subject.

In Lewes v. Lewes, 6 Sim., 304, the testator devised
certain lands to trustees, to receive rents and to pay
a certain sum for the benefit of his son's family, and
the residue for the use of his son, with no power on
the part of his son to charge or alienate it, and that
it should not be subject to the claims of creditors.
The will also provided that if the son violated the
provisions of the trust, the residue should not be
paid to him, but should be accumulated. The trus-
tee conveyed the property for creditors, and it was
held that his interest in the residue ceased.

In Brandon v. Robinson, 18 Ves., 429, Lord Eldon
said : "There is no doubt that property may be given
to a man until he shall become bankrupt. It is
equally clear, generally speaking, that if property is
given to a man for his life, the donor can not take
away the incidents of a life estate. If a condition
is so expressed as to amount to a limitation, reduc-
ing the interest short of a life estate, neither the
man nor his assignees can have it beyond the period
limited." This statement of the Lord Chancellor em-
braces the whole law in this class of cases.

In the case of Oldham v. Oldham, reported in
L. R., 3 Eq., 404, before the Master of the Rolls,
the question was, whether Oldham had been divested

of his life interest in an annuity by entering into a composition with creditors, the annuity to pass to the wife in the event he should anticipate or dispose of the fund, or should have a fiat in bankruptcy duly issued against him. He pledged this future income, and in a contest between the creditors of Oldham and the trustees it was adjudged that the stipulations of the trust should be executed, and that his life interest was gone.

The case of Shee v. Hale, 13 Ves., 404, in chancery, John Mootham, by his will, bequeathed to his son, through trustees, an annuity of two hundred pounds during his life, with the condition that it was to fall into the residuum of the estate in the event his son should sell, assign or part with the same as a security for money to be advanced, or should anticipate the same by pledging, &c., except only as to the then next annual quarterly payment. The son took the benefit of the insolvent act, and, his assignees claiming the annuity, it was held that the assignees could not take the fund, but that it passed as directed by the will.

The doctrine of the English courts is well settled on the point involved, and the courts of this country have followed it. In Nichols v. Eaton, reported in 91 U. S., 716, the Supreme Court was not disposed to accept the doctrine in so far as it restricted the power of testamentary disposition so as to prevent the beneficiary from using and enjoying the benefits of the devise against the claims of creditors. In that case the bankruptcy of the devisee was, by the will, to terminate all his interest in the estate,

and his creditors were denied the right to the estate or its profits after the act of bankruptcy. Where the debtor, who is the beneficiary, has any substantial right in the property that a chancellor can enforce, then so long as this right continues his interest is liable for his debts, but no longer. The event happening upon which the interest passes to another, the creditor is without remedy. Nor are we without precedent establishing the doctrine that the event upon which the beneficiary may be divested of title may be the decision of a chancellor subjecting the interest or income to the payment of the debts of the *cestui que trust.*

Joshua Ferris died in 1848, leaving this codicil to his will: "I hereby declare, in making provision in my will, that the income of one-third of my estate, after payment of debts and legacies, should be paid to my son, Myron H. Ferris. It was my design to make provision for the support of *himself* and family, which could not be taken from them by his creditors, and for the purpose of making myself more plainly understood on this point, and to carry out said design, it is my will that in case creditor's bill shall be filed, or any proceedings instituted against my son Myron for the purpose of reducing the interest or income so provided for him, and diverting it from the object intended by me, and a decree or judgment obtained for that purpose, that then *from that period* the said interest or income shall cease, and I direct my executor from thenceforth to expend the said interest or income for the support of the family of the said Myron H. Ferris, either by paying the same to

his wife or in any other practicable way in their discretion." (Bramhall v. Ferris, 14 N. Y., 44.)

The controversy was, in that case, between the creditors of the son and the devisees over or the executors. The New York Court of Appeals was then presided over by Denio as Chief Justice, with three associates, and the Supreme Court Judges, four in number, ex officio members of the Court of Appeals at the time that case was decided. Separate opinions were delivered from each court, holding, without dissent, the provision of the will of Ferris, that the interest of the devisee should cease on the recovery of a judgment by creditors, was valid.

In the case of White v. Thomas' Trustee, 8 Bush, 661, the will provided that the right of another to own the property devised should not be subject to alienation or sale, and that the right to the use should terminate upon an attempt to do so by the beneficiary or her creditors. This provision was upheld on the ground that Mrs. White had no interest in the property.

These cases, it seems to us, should be conclusive of the question raised, and in nowise subverts the rule of law that one vested with an interest in property can not use or enjoy it to the exclusion of creditors. Nor can the devisor, who has attempted to secure an estate for the benefit of those who are to take under him, be charged with fraud in endeavoring to anticipate the wants of his sons or their families, or liable to the charge of continuing, in violation of law, to place the estate devised beyond the reach of his son's creditors. It was his estate. He had the

right to place the limitation upon its duration, and the creditor dealing with the son knew the nature of his title. A judgment subjecting the income due at the date this opinion was delivered should be entered, and then all the interest of the sons ceases in the profits and income of the property.

Judgment below is reversed that such a judgment may be entered. In all other respects it is affirmed.