## Moore et al. v. Davis et al.

(Decided June 3, 1938.)

WHEELER & WHEELER and ELDRED ADAMS for appellants.
CLYDE MILLER and T. S. THOMPSON for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

The plaintiffs, M. A. Davis, Malissa Pack, and Rosa Burgess, were adjudged to be the owners of 21 acres of land in Lawrence County, Kentucky, and were awarded a judgment against the appellants for its immediate possession and the sum of $247 for timber cut therefrom. The plaintiff, M. A. Davis, was adjudged to be the owner and awarded the immediate possession of 13 acres of land in Lawrence County, Kentucky, and given a judgment against the appellants for $153 for timber cut from it. Thus making a total recovery against the appellants for 34 acres in land and $400 in money, with interest from August 10, 1933, the date of the filing of this suit. Aaron Moore and others have superseded this judgment and have appealed.

The plaintiffs had sought to recover $1,200 for the timber taken, but only recovered $400 as we have stated. The plaintiffs have not prosecuted a cross appeal and this $400 recovered by them is only incidentally in controversy. The real question is the ownership

of the land. If the court was correct in adjudging the plaintiffs to be the owners of this land, then, they were entitled to recover for the timber the defendants had cut from it. The latter can not complain of this $400, for the evidence convinces us it is far less than the value of the timber that was taken.

### The Ownership of the Land.

The real question is, Who owns this land? It is to this question that the greater part of this evidence is directed and this is the question that has given the greatest difficulty. On the 3d day of March, 1846, a patent was issued by the Commonwealth of Kentucky to Thomas Wallace for what was supposed to be 825 acres of land lying in Johnson and Lawrence Counties. While there is some dispute in the evidence we feel that it can safely be said that the land in controversy lies within the boundaries of this patent.

On December 21, 1870, Thomas Wallace and his wife executed a deed to James A. McGuire in which they undertook to convey to him 375 acres that was left of this patent in Lawrence County, Kentucky, after deducting certain exceptions, and among the exceptions we find this one:

"Also sixty eight acres lying on the Lane Branch surveyed at the instance of William Davis."

We conclude from this evidence that this 68 acres which was excepted by Wallace from the deed made to McGuire is situated in the south eastern part of this Wallace patent and that the eastern line of this 68 acres is the eastern line of the Wallace patent, and that the southern line of this 68 acres is the stream known as Orchard or Lane Branch, which is a tributary of Hood's Branch of Big Blaine Creek. Wallace owned other land in this neighborhood and on the 18th of September, 1855, he sold to John Matney 6 tracts of land. The following year Matney sold these 6 tracts to Joseph H. Nickells. Eleven years later these 6 tracts were conveyed from Nickells to H. S. Swetman.

On March 21, 1868, Swetman conveyed these 6 tracts to William Davis, who is the same as the William Davis mentioned in the above exception. The 68 acres of land contained in the above exception adjoined and was used by William Davis with certain land he ac-

quired from Swetman and was known as the Nickell's farm. In the will of William Davis which was probated January 12, 1888, we find this:

"I give and bequeath to my son John B. Davis one-half interest in the farm known as the Nickell's farm at forks of Hood and unto the heirs of my son Amos Davis I give and bequeath to W. C. Davis, J. W. Davis, C. G. Davis the remainder of said Nickell's farm."

This land thus bequeathed to John B. Davis and the children of Amos Davis was partitioned by the court in the year 1888. By survey it was found to contain 182 acres. This 68 acres which we have mentioned above was then in timber. In this partition, this 182 acres was divided by lines running from N. W. to S. E. thus cutting this 182 acres into long strips each of which contained some of this woodland.

To John B. Davis as his ½ of this 182 acres there was allotted the southern strip of 112 acres and the remaining 70 acres was divided by lines running parallel to this first one, so that each one of them got a portion of this woodland and these Amos Davis heirs received about 23 acres each. Later John B. Davis died, intestate, leaving four children as his heirs at law. One of these is the plaintiff M. A. Davis, another is the plaintiff Rosa Burgess, and another is the plaintiff Malissa Pack. The fourth child was W. J. Davis, who died intestate survived by four children, Lillie Davis, Eva Davis, Madge Chandler and L. W. Davis. M. A. Davis has by purchase acquired the interest of these four children, thus making him the owner of ½ of this 112 acres. He also acquired by purchase from the three children of Amos Davis their interests in this 70 acres, thus making M. A. Davis the owner of the whole of this 70 acres. M. A. Davis is the owner of the whole of the 13 acre tract mentioned at the outset of this opinion and he owns ½ of the 21 acres mentioned, while Mrs. Burgess and Mrs. Pack own the other ½ of this 21 acres. This 13 acres is woodland and it and the 57 acres of cleared land adjoining it on the east make up the 70 acres which M. A. Davis acquired from the children of Amos Davis.

The 112 acres, ½ of which belongs to M. A. Davis and the other half to Mrs. Burgess and Mrs. Pack, is composed of 21 acres of this woodland and 91 acres

of cleared land to the east of it. This 112 acres and 70 acre tract make up the 182 acres which was the content of the Nickell's farm, 34 acres of which, now in timber, is the land in controversy, being the 13 acre tract and the 21 acre tract. It is this 34 acre tract which the plaintiffs recovered under the judgment now before us.

### The Claim of the Appellants.

We have four appellants. Aaron Moore claims to own the land. The other appellants would not have been involved in this controversy if they had not been associated with Moore in cutting this timber. So the disposition of Mr. Moore's claim will dispose of their claims, for if Moore is entitled to no relief, they are entitled to none.

From time to time portions of this 68 acres had been cleared and put in cultivation and before Moore et al. answered, the uncleared portion had been carefully surveyed and found to contain only 34 acres (the 13 acre and the 21 acre tracts) and Moore et al. were careful to make no claim to any part of this 68 acres except the 34 acres yet uncleared, upon which they claim the plaintiffs have never had or exercised any actual possession.

This record does not disclose when Thomas Wallace died, but there is reference in this record to the case of Wallace v. Lackey, 173 Ky. 140, 190 S. W. 709, and from that opinion we learn that Thomas Wallace died in 1871.

This record shows that in a suit in the Lawrence Circuit Court for the settlement of his estate, styled Thomas Wallace's Adm'r v. Thomas Wallace's Heirs, a judgment was entered in 1875 directing the Master Commissioner to sell the property of Thomas Wallace. There appears in this record a judgment entered February 28, 1918, forty three years thereafter, in which it is recited that the land described in this opinion had been sold February 25, 1918, to the appellant Aaron Moore for $350, which had been paid, which sale the court approved and after describing the land in controversy here, directed W. M. Savage, the Master Commissioner, to make conveyance thereof to Moore.

On February 28, 1918, a deed was made by the Commissioner and approved by the Judge of the Lawrence Circuit Court, attempting to convey to Aaron

Moore the land now in controversy and on the following day it was recorded in the Lawrence County Court. By what process this case was restored to the docket at that late day does not appear, but in view of the conclusion we have reached, it is of no importance.

## Our Conclusion.

We will introduce our conclusion by stating again the exception contained in the deed made by Thomas Wallace to McGuire, which is:

"Also sixty eight acres lying on the Lane Branch surveyed at the instance of William Davis."

Let us note that this is described in that deed as an exception, not as a reservation. These two words are sometimes used in deeds as if they were synonymous, but they are not. There is a difference between an exception and a reservation as we pointed out in the case of Cox v. Colossal Cavern Co., 210 Ky. 612, 276 S. W. 540. Strictly speaking a reservation does not affect the description of the property conveyed at all, but retains to the grantor some right upon the property, as an easement, etc. But an exception is different. It operates upon the description and withdraws from the description the excepted property. The effect of the words we have quoted above from the deed to McGuire was to exclude from the operation of that deed the 68 acres mentioned, and it would exclude from that deed those 68 acres just as effectually as if the property conveyed to McGuire had been resurveyed that day and conveyed to him by a new description which excluded that 68 acres. The deed to McGuire conveyed him no part of that 68 acres, no interest in it, or rights upon it. It was excepted, excluded and withdrawn from that description entirely. In this exception Mr. Wallace went further and solemnly declared why he was excluding it and said it was 68 acres of land lying on the Lane Branch that had been surveyed at the instance of William Davis. In other words, Thomas Wallace in that deed solemnly declared that he did not own that 68 acres, but it belonged to William Davis.

That deed to McGuire was made in 1870, sixty eight years ago, and the subsequent conduct of William Davis and his heirs and Thomas Wallace and his heirs has been perfectly consistent with this deed from that

time down to 1918 when Aaron Moore began his activities which resulted in this litigation.

By section 4704, Kentucky Statutes, it is provided:

"None but vacant land shall be subject to appropriation under this chapter. Every entry, survey, or patent made or issued under this chapter shall be void, so far as it embraces lands previously entered, surveyed, or patented."

That identical provision is in Ch. 102, section 3, subsection 8, of Stanton's Revised Statutes of Kentucky. The compilers of the Revised Statutes probably took this from the Act of 1835, which provided:

"Any survey or patent made or issued under this act, which interferes with any survey or patent heretofore made or issued, shall be null and void."

In the case of McMillan's Heirs v. Hutcheson et al., 67 Ky. 611, 4 Bush 611, we find this:

"There being no legal authority under either of these enactments to survey or grant land already appropriated, and, therefore, not 'vacant,' the illegal appropriation is intrinsically invalid. The act of 1815, however, virtually declared that it should not be void, but only inferior; but the act of 1835, declaring it void, used language which could not be misinterpreted by those who often use and construe void as synonymous with voidable; and to leave no subterfuge for such misinterpretation, and show that the word void was used in its technical and true philological sense of nullity, it prefixed 'null,' and said 'null and void'."

The words we have quoted from this deed made by Thomas Wallace to McGuire were more than a simple exception from the deed to McGuire, they were a solemn statement by Wallace of his reason for making this exception. These words constituted a solemn admission by Wallace this 68 acres of land had been surveyed for William Davis and therefore he (Wallace) was not conveying it, but was excepting it because it had been surveyed for William Davis. The appellants claim under Wallace. They have no rights in this land except such as they have derived from him. They can not recover if Wallace could not recover if he were alive. In the face of this solemn admission against his

844

interest made by Wallace after the receipt of his patent, Wallace certainly could not recover.

The conclusion we have reached that Moore et al., never acquired any title to this 68 acres or any part of it, makes it unnecessary to go into the question of whether or not they have lost title by the possession and occupation of it by the plaintiffs and those under whom they claim for the last 68 years.

Therefore the trial court's judgment is correct, and it is affirmed.