## Lane et al. v. Taylor et al.

June 6, 1941.

118

Robert Denney and B. T. Moynahan, Jr., for appellant.

R. L. Bronaugh, W. H. Mackey, W. C. Goodwyn, J. F. Williamson and Theo W. Bates for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

On May 6, 1940, Lane, appellant, defendant below, entered into written contract with appellees Samuel and Floyd Taylor, whereby the Taylors agreed to sell and Lane to purchase a described tract of land in Jessamine County, containing 83 acres. Thereafter the Taylors instituted suit in the form of a petition seeking a declaration of rights, in which they set up the contract, and say they had tendered a warranty deed to Lane "which in all respects complied with the conditions of the contract," which Lane declined to accept because of his belief that grantors could not convey good title.

The Taylors had purchased the tract on July 19, 1921, from Holman Sparks and wife, and assert that since said date they had been in adverse possession. The alleged defects in title may best be shown from responsive pleadings by Lane.

In answer, cross-petition and counterclaim Lane admitted the execution of the contract, but denied that the grantors are able to execute a deed of general warranty. He concedes that the title came to the Taylors as stated, and denies allegations as to adverse possession. His claim of defect arises from the history of title as it came down to the Taylors. There is no question but that Holman originally held fee simple title.

On September 25, 1902, Holman Sparks conveyed to E. R. Sparks the land in controversy, it being recited in the deed that it was allotted to him in the division of lands of J. W. Sparks, deceased. The consideration was $5, and an agreement on the part of E. R. Sparks to convey as per grantor's directions. In the habendum it was

recited: "To have and to hold unto the second party * * * upon the trusts and for the purpose herein indicated." On the same, or next day, E. R. Sparks conveyed to Maggie C. Sparks, the consideration being $5; the habendum recited:

"To have and to hold the same unto the party of the second part in trust for her son Holman C. Sparks, during his life, subject to the conditions herein shown; that is, the said Holman C. Sparks shall have no power to sell, mortgage or in any way encumber the said property, and the same shall not be liable for the debts of the said Holman C. Sparks, and if any attempt is made to subject the same to his debts by execution attachment or judgment of court, * * * all his interest in the said property shall at once cease, and the same shall go to the children of the said Holman C. Sparks, those now living and any others he may have, and at the death of Holman C. Sparks, or in case of any attempt to subject the property to any debt of said Holman C. Sparks, then the said land shall go to the said children of the said Holman C. Sparks."

On July 16, 1913, Maggie C. Sparks, trustee, and Holman conveyed to Jean Sparks, wife of Holman. The consideration was $1, the first parties conveying all their right, title and interest. The habendum read:

"To have and to hold the same * * * to the second party, for and during the life of the said Holman Sparks, with covenant of special warranty on the part of Maggie C. Sparks, Trustee, and with covenant of general warranty on the part of said Holman Sparks."

The deed further recited:

"The interest conveyed being the life estate of the said Holman Sparks, and at his death said land is to go as provided in the above mentioned deed from E. R. Sparks to the children of the said Holman Sparks, that are now living and any others that he may have."

We gather from proof that Holman Sparks is still living, but divorced from the wife Jean; that there was one child born to them who died unmarried in August, 1918. Holman has remarried, and it is asserted that he

had no children at the time of suit. These facts are admitted by Lane, but he asserts that by reason of the provision of the various deeds, carving out a life estate for Holman, there is a remainder, and while there are no living children, that upon the happening of the condition, that is, of children in the future, such would be seized upon Holman's death. Holman and wife were made parties, and answered disclaiming interest.

Lane asserts that if the grantors can convey to him good title, he is able and ready to conclude his part of the contract. However, if the title is clouded, he asks that the contract be held null, and on his cross-pleading for judgment against plaintiffs for the amount paid upon execution of the title bond. The guardian ad litem, appointed for the unknown and unborn children of Holman Sparks, in answer adopted and reiterated for all practical purposes, the pleadings of Lane. The Taylors had executed mortgages to two Federal loaning institutions which were made parties, and they, with the Taylors, plead that the limitations if valid, applied only to the living child or children, and that upon the death of the infant in 1918, his mother and father then living, inherited his interest in the property. They also plead, as had the Taylors, a judgment in the suit of R. M. Sparks v. Holman Sparks, instituted in September, 1919, in which the deeds of Holman to E. R., and E. R. to Maggie, were held void, and assert that said judgment is still in full force and effect. The interpleaders ask that Taylor's title be declared good, subject only to their liens; that Holman and wife, and unborn children, be adjudged to have no interest.

Proof was taken, some by depositions, and other in open court. Maggie C. Sparks testified that Holman was then sixty years old; E. R. Sparks was Holman's uncle. She was asked about the conditions under which the deed of September 2, 1902, from Holman to E. R., and as to consideration, but she remembered nothing about it, nor did she recall the deed from E. R. to witness on the same date, except that she thought she signed the deed. She never paid any money, nor did she take possession or exercise control of the property. Holman rented the place out himself. The boy John died in 1918. Holman had no other children. Other proof, heard orally, manifested adverse possession in the Taylors for a period of more than fifteen years.

Upon submission, and after clearing the record of all demurrers and motions, about which rulings there is no complaint, the court adjudged that the Taylors could pass a good title, and that Lane should comply with his contract of purchase.

As the case was presented below, the chancellor had under consideration several issues which are likewise presented and forcefully argued here. First, that the deeds from H. C. to E. R. Sparks, and by the latter to Maggie C. Sparks, undertaking to create a trust, were void and of no effect, the contention of appellees being that H. S. Sparks, admittedly of unstable qualities when the deeds were executed, could not, nor could a third party for him, create a valid and binding trust, and pointed to Section 2355, Kentucky Statutes, which needs no elucidation as to the effect of such a trust as between the settlor and bona fide creditors.

We have frequently construed that statute, and have upheld it where there was an effort to defeat the claims of bona fide creditors. See De Charette v. St. Matthews Bank & Trust Co., 214 Ky. 400, 283 S. W. 410, 50 A. L. R. 34, cited with approval in Ford v. Ford, 230 Ky. 56, 18 S. W. (2d) 859, 861, in which we held total invalidity "unless he [settlor] goes further and provides that, in case it is sought to be subjected, the title shall go to some one else." We referred to the Ford case, supra, in Keith v. First National B. & T. Co., 256 Ky. 88, 75 S. W. (2d) 747, which in turn cited Bull v. Kentucky National Bank, 90 Ky. 452, 14 S. W. 425, 12 Ky. Law Rep. 536, 12 L. R. A. 37, in which we held that a beneficial interest in property may be subjected to the debts of the beneficiary, but where the trust provides that if the trust property be subjected to the debts of the first beneficiary, it shall go to another, after adjudication subjecting the property the second beneficiary takes free from any right of subjection. This ruling has been consistently followed by our courts, and we find nothing to indicate that a spendthrift may not validly create such a trust as is here involved, subject to the principles stated.

It is contended that the judgment in the case of R. M. Sparks v. Holman Sparks et al., entered in the Jessamine circuit court in 1920 or 1921, is conclusive, since in that case the deeds from Holman to E. R., and from

the latter to Maggie C. Sparks, were held void. This is true, as shown by our opinion in Sparks v. Sparks, 190 Ky. 427, 227 S. W. 571, 572. Holman was indebted to his uncle R. M. Sparks, and the latter having judgment and execution, on a nulla bona return, sought to subject this same land to sale. In his pleading he recited the execution of the deeds which we have mentioned, and asked that they be set aside. Maggie Sparks answered, as she and Holman did in the instant case, disclaiming any interest. Holman also answered asserting that he had made the deed at the instigation of E. R. Sparks; that at the time he "was a young man of inexperience, unstable habits, but he is now nearly forty years of age and settled in habits and business"; that he had no intention to dispose of his title in said land; his only thought was "the protection of his property from attack by his creditors," and did not know the true meaning of the instruments until the suit to subject the property was begun.

In disposing of the case in our court, we found that there was no controversy between the parties as to the correctness of the judgment.

"Each of the three parties * * * received by the judgment of the circuit court the very relief * * * sought, and no one * * * is complaining of it."

We dismissed the appeal on authority of Light v. Miller, 187 Ky. 57, 218 S. W. 307.

We need not enter into an extended discussion as to the effect of the ruling in the Sparks v. Sparks case, except insofar as it affected the remainder interest set up in the deeds from E. R. to Maggie Sparks, or in the deed from her and Holman to Jean, his wife, in two of which there was undoubtedly created a remainder interest in children of Holman Sparks, then living and such as might hereafter be born of him.

The proceedings in Sparks v. Sparks suit are made part of the record before us, being plead by appellees, and incorporated at their instance, however, as to the judgment, over the objection of appellants. As we read that record, and as this court found, there was no con-

troversy between the three parties involved. It is clear that all parties were undertaking only to be rid of so much of the conveyances as on their faces prevented R. M. Sparks from collecting on his judgment.

On the allegations of the petition, and the admissions of H. C. and Maggie C. Sparks, the court could not do otherwise than hold the deeds void, insofar as they affected the interests of the parties before the court. It is quite noticeable that in this proceeding there was no mention of the conveyance from Maggie C. to Jean Sparks, which conveyed only the life estate of Holman, reserving the remainder to any children. The difficulty herein lies in the fact that while the interests of Holman and of Maggie C. Sparks, as trustee, were presented, the interest of any children who might be later born, were not. It is true that at this time the only child born of Holman Sparks had previously died, and, as correctly argued, his interest descending to the mother and father, was extinguished by the deed to the Taylors. But this is not true as to any interest of a child which, insofar as record facts manifest, may yet be born.

We need consider only for a moment the argument that the trust deeds of Holman Sparks to the intermediate and final trustee were without consideration, since this is not an issue between debtor and creditor. We are only concerned with the question of possible rights of future children, insofar as it has effect on the quality of title. This question is thoroughly settled in the case of Underhill v. United States Trust Co., 227 Ky. 444, 13 S. W. (2d) 502, which is applicable also on other contentions made. Nor are we impressed with the idea that under the showing made in the instant case that the conveyances should be held void, because of mistake, misunderstanding or undue influence. Such a ground is not supported by pleadings, but if so, certainly not by evidence outside and beyond the judgment in the Sparks case, supra. This argument is based on the principle that a gift of one's estate, without right or power of rescission or revocation when accompanied by proof of mistake, misapprehension, or made under undue influence, may and should be set aside. However, it would require proof of considerable strength to annul the conveyance on this ground.

The judgment of the lower court in Sparks v. Sparks, supra, determined solely an issue between

debtor and creditor. It did not involve potential vested or contingent rights of remaindermen. It may be conceived that had such an issue been raised, the attitude of Holman Sparks as to the interest of his children might have been different. This proceeding in nowise involved the terms and conditions of the deed from H. C. and Maggie Sparks to the wife Jean. However, without further discussion, we may point to Burton v. Burton's Trustee, 198 Ky. 429, 248 S. W. 1031, as being fully responsive to the foregoing argument.

It is not difficult to conclude from a reading of all the instruments in question that there was carved out of the original 83-acre tract, two estates; a life estate for Holman, a vested remainder in the children born, and to be born of H. C. Sparks. The case of Slack v. Downing, 233 Ky. 554, 26 S. W. (2d) 497, lays down the law clearly, with the exception in that case there was a contingent remainder, while here the title was complete upon the death of Holman Sparks. See also cases cited in the Slack case, and Scott v. Ratliff, 179 Ky. 267, 200 S. W. 462, L. R. A. 1918C, 805.

We need consider the question of laches, limitations or adverse possession but briefly, since it is well settled that such do not prevail against the interest of remaindermen during the period of outstanding life estate. Superior Oil Corp. v. Alcorn, 242 Ky. 814, 47 S. W. (2d) 973; Murphy v. Boling, 273 Ky. 827, 117 S. W. (2d) 962, 117 A. L. R. 1373. Nor is it worth while to discuss the question as to the necessity of having the unborn children represented in the Sparks v. Sparks case in which Maggie C. Sparks disclaimed interest as trustee or otherwise. For obvious reason neither she, as trustee, nor Holman represented those who might become remaindermen.

As to the necessity of representation, see McComas v. Hull, 274 Ky. 192, 118 S. W. (2d) 540, and cases cited, and as to whether or not there was virtual representation of remaindermen, we may refer to Lowe v. Taylor, 222 Ky. 846, 2 S. W. (2d) 1042, and the more recent case of Fischer v. Porter, 263 Ky. 372, 92 S. W. (2d) 368, which is conclusive on this as well as on some other questions presented.

The plaintiffs below, as well as defendant Lane in his counter-pleadings, sought a declaration of rights.

The court adjudged that Lane should carry out his part of the contract, based on his conclusion that the grantors had good title. In so concluding he was in error.

Under all the pleadings (and proof), and particularly Lane's cross-pleadings, the court should adjudge that Lane is not required to comply with the contract of purchase, and further adjudge him entitled to recover of plaintiffs any amount paid by him to plaintiffs by reason of the execution of the title bond.

Judgment reversed for proceedings consistent with this opinion.