Edgar CLARK et al.

v.

Vernon J. WILSON and Joe McGuire, d/b/a
Mt. Carmel Drilling Company, et al.,
Appellees.

Court of Appeals of Kentucky.

Oct. 3, 1958.

Charles I. Dawson, Bullitt, Dawson & Tarrant, Louisville, for appellants.

John O. Hardin, Hopkinsville, Albert Williams, Nashville, Tenn., Nichols & Nichols, Madisonville, Milliken & Milliken, Bowling Green, for appellees.

STANLEY, Commissioner.

The case involves title to oil and gas and other minerals in and under 36⅛ acres in Hopkins County. The primary question is whether or not an instrument executed on July 23, 1889, by James Adams to Sand Lick Oil and Gas Company is in fact a deed conveying as a severed estate a fee simple title to oil and gas underlying the described 500 acres, of which the 36⅛ acres are a part. A subsidiary and contingently controlling question is res judicata.

The action is in trespass brought by the appellees, B. G. Pratte and C. K. Pratte, who claim title to the minerals by mesne conveyances under the Adams instrument of July 23, 1889, and Vernon J. Wilson and Joe McGuire d/b/a Mt. Carmel Drilling Company, who have an oil and gas lease from the Prattes, against the appellants, Edgar Clark and Marie Clark, who deny the appellees' title and claim complete ownership of the property, both surface and mineral. The court adjudged that the appellees Pratte are the owners "in fee simple absolute of all the minerals, including the oil and gas in and under" the 36⅛ acres and that the Wilsons "have a good and valid lease to the oil and gas in and under" that land. The Clarks were permanently enjoined from interfering with the exercise of the rights of the other parties.

Shortly after the Sand Lick Oil and Gas Company was incorporated in 1889 for the apparent purpose of developing lands in Christian County for oil and gas, it obtained instruments of title to such minerals from at least 57 land owners. These instruments were practically the same in form and substance. The company drilled a two inch shallow well on one tract and obtained a total production of about ten barrels of oil. It drilled five or six dry holes on other tracts. None of these wells was on the Adams land. The company then abandoned the venture and seemed to have closed all operations, both corporate and physical.

In September, 1928, which was fourteen years after the expiration of its twenty-five year charter, suit was filed by Paul M. Moore, et al., as a class action against James W. Whittinghill, et al., and unknown stockholders to wind up the affairs of the corporation and sell its assets, which the petition alleged to be mineral rights in the several tracts of land which had been obtained in 1889, forty-nine years before the suit was filed. The defendants admitted the allegations of the petition and joined in its prayer. Judgment was entered permitting the prosecution and defense of the suit for and in behalf of all other stockholders. The assets of the former corporation were described as being "the oil, gas and minerals rights in, to and under the lands" described in the petition and a sale thereof by the Master Commissioner was ordered. Such a sale was made to Gant Gaither for $1,010. Included in the sale and the Commissioner's deed to Gaither was the 500 acre tract covered by the conveyance of James Adams of date July 23, 1889. On March 10, 1933, Gaither conveyed to the appellees, Pratte, the mineral rights in the tract of 36⅛ acres involved in this litigation.

In March, 1894, James Adams devised his 500 acres to his six sons without making any reference to the instrument of July 23, 1889. No reference was ever made in subsequent deeds of partition and conveyances. It is readily seen that the respective parties derived title from James Adams as a common source.

The instrument of July 23, 1889 reads:

"I, James Adams, of Christian County, State of Kentucky, have this day

sold and hereby convey to Sand Lick Oil and Gas Company the mining and mineral privileges of, on and under the following described tract of land, viz.: On waters of Tradewater, County and State aforesaid, same on which I now reside, containing about 500 acres in several tracts but forming one body, adjoining Widow Croft's lands, Joe Terry lands and lying on both sides of the Buttermilk Road.

"This deed of conveyance carries to the said Sand Lick Oil and Gas Company the right to bore, sink wells and shafts on the land aforesaid to obtain natural gas, petroleum, salt water and other minerals or substances that may be thereon or thereunder, to take, use and sell the same on the premises or convey the same from said land to market for sale and receive and enjoy the proceeds of same. The consideration of this deed is twenty-five (25) shares of $100.00 each in the Sand Lick Oil and Gas Company organized under the general statute laws of the State of Kentucky to be issued and delivered to me in fully paid up stock certificates in said company within three (3) months after this date, or if the said Sand Lick Oil and Gas Company should sell and convey the privileges to another company within three months, then for the said number of shares in the company to which it so assigns the same in lieu of shares in this company, but I am not to be liable to anyone in any event for payment of any money on any account.

"Given under my hand this 23rd day of July, 1889.

"(s) James Adams.

"Attest:

"W. L. Gordon

"J. M. Dulin.

As stated above, the primary question in this case is the proper construction of that instrument. It has the attributes of a deed conveying the minerals as a severed estate in fee simple. It also has the attributes of an oil and gas lease. Among those to be noted is the reference to the possible sale and conveyance by Sand Lick of "the privileges" granted. Some time after the judgment in this case was entered our opinion in Bardhill v. Sellers, Ky., 298 S.W.2d 5, 6, was published. The appellants maintain that decision and the two cases cited therein determine the instant case.

In the Bardhill case we construed the instrument which was executed by Rideout and wife to the Owensboro Hawesville Gas and Mineral Company (one of many such conveyances also executed in 1889) to be a "lease" rather than a "deed." The parties to the Adams instrument did not express an obligation on the part of the grantee or lessee to develop the property within a set period as did the Rideout instrument. But that provision was not regarded as of vital importance, the decision of the Bardhill case being upon the ground that in such a conveyance of minerals and right an implied duty and condition is annexed to the grant that there will be reasonable development "unless there is an immediate valuable consideration paid to the grantor, as distinguished from a consideration dependent solely upon the election of the grantee as to future activity." Like the instrument in the Bardhill case, the present one was for a consideration which did not have and would never have had any value "except when and if the company chose to engage in development of its 'leases'." The decision is not only supported by our two former cases cited therein, but by other authority as well. See Summers, Oil and Gas, Vol. 2, § 398 and Annotation, Instrument conveying land, minerals, or mineral rights as raising implied obligation to drill and develop for oil and gas. 137 A.L.R. 415.

In Eastern Kentucky Mineral & Timber Co. v. Swann-Day Lumber Co., 148 Ky. 82, 146 S.W. 438, 46 L.R.A.,N.S., 672, and in Kentucky Rock Asphalt Co. v. Milliner, 234 Ky. 217, 27 S.W.2d 937, we regarded the

real inducement and the consideration for each conveyance (in form absolute) as being the exploration and development of the property and the royalty or a percentage of the production. We, therefore, held the omission of a stipulation as to when development operations shall begin or of a reservation of the right of reentry because of inaction will not prevent the enforcement of the implied condition that development shall be begun within a reasonable time. We observed in the Eastern Kentucky Mineral & Timber Co. case that this was not a novel method of interpretation, saying [148 Ky. 82, 146 S.W. 442], "The books are full of cases in which the courts, to prevent gross injustice, have gathered from the contract and the circumstances surrounding its execution the intention of the parties and construed it to carry out their purpose, although in so doing it was found necessary to supply omissions."

We construe the old Adams instrument as being the same as an oil and gas lease. This is necessary to effectuate the actual intention of the parties as reflected by the instrument as a whole in the light of the circumstances under which it was made and the purposes sought to be accomplished. Yunker's Co-Executors v. Mason, Ky., 284 S.W.2d 98. Abandonment and breach of the condition to develop the property forfeited the rights which passed under the Adams lease to the Sand Lick Oil and Gas Company. Justice v. Burgess, 244 Ky. 774, 52 S.W.2d 720.

The appellees submit that if the court should construe the Adams instrument as not passing title to the oil and gas as a severed estate, the appellants are bound by the judgment in the earlier class suit of Moore v. Whittinghill, as above described. It is well recognized that a representative or class action may be maintained by stockholders to liquidate the affairs of a defunct corporation. Shadoin v. Sellars, 223 Ky. 751, 4 S.W.2d 717; Barrowman Coal Corp. v. Kentland Coal & Coke Co.,

302 Ky. 803, 196 S.W.2d 428. But the question here is the basic one of adjudication of rights of Adams' successors in title to a portion of his land embraced in the old instrument.

Where rights of persons not parties or privies to an earlier proceeding are adversely affected by the judgment rendered therein, such persons may impeach the judgment whenever their rights are affected or its validity is drawn in question. 30A Am. Jur., Judgments, §§ 393, 395, 399, 849. Persons who own land cannot be divested of title thereto in a judicial proceeding to which they were not parties. Carpenter v. Moorelock, 151 Ky. 506, 152 S.W. 575.

In the instant case the plea of res judicata rests on the recognized exception that a judgment in a class action to which some members of the class are parties properly before the court may bind members of the class who were not actual parties to it. 30A Am. Jur., Judgments, § 405.

Parties to a class action must have a "common or general interest" in the subject matter. § 25, Civil Code of Practice. (In effect at the time but superseded by Civil Rule 23.01.) The ancient doctrine of representation in a class action rests on the ground of identity of interests. Adverse or hostile interests are not represented. Lile v. Kefauver, 244 Ky. 486, 51 S.W.2d 473; Garfein v. Stiglitz, 260 Ky. 430, 86 S.W.2d 155; 50 C.J.S. Judgments § 777; 30A Am.Jur., Judgments, § 405. Persons cannot be bound by the judgment in such an action unless it appears that the parties appearing as their representatives had interests that were in fact similar to and consistent with those of other members of the purported class. Lowe v. Taylor, 222 Ky. 846, 2 S.W.2d 1042; Fischer v. Porter, 263 Ky. 372, 92 S.W.2d 368; Kentucky Home Mutual Life Ins. Co. v. Duling, 6 Cir., 190 F.2d 797.

In the prior suit of Moore v. Whittinghill the interests of stockholders who

may have acquired stock in consideration of the execution of the conveyances or leases conflicted with interests of stockholders represented in the suit to settle the affairs of the Sand Lick Oil and Gas Company who had acquired their stock by purchase. Certainly the then owners of the land described, even if no more than of the surface, would be and were vitally affected by the relief sought and granted by the judgment. They were not represented in the action even by assumed representation.

This record does not show that any stock of the Sand Lick Oil and Gas Company was actually issued to Adams, who had died fifteen years before the class action was filed. Of all the many grantors or lessors who had executed like instruments in 1889, only the estate of John M. Dulin was a party to the suit or could have been constructively brought before the court in the class action of the stockholders. However, there is no allegation in that suit that Dulin or his successor ever owned any of the stock. The successors in title to the Adams land or his estate had no notice of the case.

The facts in Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741, were these: In a prior suit in the state court by a landowner in a restricted area against other property owners to enforce an agreement against selling or leasing any part of the land to Negroes, it was adjudged that the agreement had been signed by ninety-five percent of the owners of the frontage of the lots, which was a condition precedent to the effectiveness of the agreement. In a later suit that judgment was held by the state court to be res judicata of the question whether in fact ninety-five percent of the owners had agreed. On appeal it was held by the Supreme Court of the United States that to hold the former suit to be res judicata as against property owners who were not parties to the prior suit, so as to preclude them from showing the agreement had not in fact been executed by the required percentage of the owners, would deprive the

owners who were not parties to the first suit of due process of law. This was because the several property owners did not constitute a single class, and there was a potential conflict of interests as between the parties to the suit and the persons who purported to represent them, in that the latter might deem it to their interest to challenge rather than assert the restrictions.

We cannot escape the fact that there was no real or virtual representation in the class action of persons having title and rights of property derived from James Adams so as to insure adequate or any protection of their interests. The former agreed judgment did not undertake to protect those rights, although it did direct a sale of the mineral rights in their land. Prewitt v. Wilborn, 184 Ky. 638, 212 S.W. 442; Lane v. Taylor, 287 Ky. 116, 152 S.W.2d 271; Citizens Telephone Co. v. Anderson, Ky., 291 S.W.2d 527. It would be abhorrent and would deny due process of law to hold that the appellants, as owners of title to the land involved, were deprived of their property by the judgment entered to wind up the affairs of the fly-by-night corporation which had become extinct more than forty years before this suit was filed against them. This is emphasized by the fact that there was no issue concerning their rights and none was adjudicated. The appellants never had their day in court before this case.

■ We come to the question of the effect of Curtis-Jordan Oil & Gas Co. v. Mullins, 269 Ky. 514, 106 S.W.2d 979. The case related to one of many similar leases of Christian County property obtained by the Sand Lick Oil and Gas Company in 1889, including the Adams conveyance. Patterson, the grantor or lessor, in the instrument involved, in a later conveyance of his property had excepted the oil and gas rights covered by that instrument, but it does not appear they were excepted in subsequent conveyances. The suit for the settlement of the affairs of the defunct corporation above described is referred to in the opinion. It is stated in the opinion that there was nothing

in the record to sustain the allegations of the petition to the effect that there was a failure of consideration for the conveyance of the minerals by Patterson or as to the invalidity of the decree under which Gaither had obtained title. It appears from the opinion that no issue was raised as to the construction or interpretation of the original instrument. The court merely regarded it as having passed complete title to the oil and gas and decided the main, if not the only substantial, questions of adverse possession and of fraud in relation to a subsequent lease. In any event, the parties to the present litigation were strangers to the Curtis-Jordan case, so the essential element of res judicata of identity of parties is absent. And the value of an opinion of an appellate court as a precedent is in what it decides. There was no decision in the Curtis-Jordan case as to the proper construction of the old instrument involved. It may not be held to be res judicata or as a controlling precedent.

The judgment is reversed with directions to enter another in conformity with this opinion.

Judgment reversed.