## Barnett et al. v. Barnett et ux.
June 4, 1940.

D. B. Caudill, Judge.

W. C. Hamilton for appellants.
John J. Winn for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

In 1909 Jack Barnett and Sarah Barnett, husband and wife, conveyed to their children, James Barnett, Winfield Barnett and Manda B. Robinson, a tract of land owned by the grantor, Jack Barnett, containing about 135 acres for the recited consideration of $1 and for love and affection and the further consideration that the three grantees pay to Gracie Hamilton $100 when she became 21 years of age, each to pay one third of such sum, but if she should die before attaining that age the grantees would be relieved of that obligation. The deed contained the following provision:

"But is expressly understood that the parties of the first part is to keep full possession of said land as long as either one lives and is to have full control of said land for their natural lifetime and title does not pass until the death of both parties, * * * ".

Jack Barnett died shortly after the execution of this deed but the widow continued to live upon the land until her death in the latter part of 1938. James Barnett died in 1931. Previous to his death Manda B. Robinson conveyed to him and to Winfield Barnett jointly all her interest in the farm. After the death of Sarah Barnett the heirs of James Barnett brought this suit against Winfield Barnett for sale of the land and a division of the proceeds alleging that the tract was jointly owned by their father and Winfield Barnett; that they jointly inherited a one-half undivided interest therein from their father. Later the widow of James Barnett was made party plaintiff.

By counterclaim and cross petition Winfield Barnett traversed the allegations of the petition adverse to him and alleged that after the conveyance from their sister and prior to the year 1919 he and James Barnett divided the land between themselves, ran a division fence between their respective portions and agreed that the portion of the land lying generally on the western side of the division line so agreed upon should belong to the defendant and the land on the other side thereof should belong to James Barnett; that pursuant to such agreement defendant held and owned the tract of land which it was agreed he should take and which was described in the answer subject only to the life estate of Sarah Barnett and that neither the widow nor heirs of James Barnett had any interest therein whatsoever; that each of the parties to the agreement took charge of, managed and controlled together with the life tenant his respective portion of the division allotment; that for more than 15 years defendant had held, owned and been in the possession of the vested remainder, peaceably, actually, adversely, etc., and that by reason thereof became the sole and absolute owner in fee simple of the tract allotted to him by the agreement. He prayed that he be adjudged the owner in fee simple of all the tract described in the answer and that his title be quieted against claim of all parties.

By reply plaintiffs traversed the affirmative allegations of the answer and in an amended petition among other things alleged in substance that under the quoted provisions of the deed from Jack Barnett and wife to their children neither of the grantees were given or took any interest in the land or any control thereof and acquired no title, possession of, or interest therein until after the death of both grantors.

On final hearing the chancellor adjudged that prior to the year 1918 James Barnett and Winfield Barnett, with the consent and approval of their mother, divided the land formerly owned by Jack Barnett and established a dividing line, built a fence thereon and agreed that the tract lying on the western side of the division should belong to Winfield Barnett and that on the eastern side to James Barnett, subject to the life estate of their mother; that Winfield Barnett from the time of the establishment of the division line, together with

his mother, kept, managed, controlled and held that portion described in his answer, etc., continuously for more than 15 years by adverse possession and that he was the absolute owner in-fee simple thereof; that none of the parties had any interest whatsoever therein and that Winfield Barnett's title thereto be quieted. Plaintiffs are appealing.

It is first argued in effect by counsel for appellants that none of the children of Jack Barnett and wife took any title or interest whatever under the deed from their parents until the death of the mother and that the quoted provision in the deed rendered it testamentary in character. In Phillips v. Thomas Lumber Company, 94, Ky. 445, 22 S. W. 652, 15 Ky. Law Rep. 219, 42 Am. St. Rep. 367, the court had for construction a similar provision in a deed and under the holding in that case it is manifest that Jack Barnett and wife divested themselves of all title in and to the land except a life estate and their children took a vested remainder.

It is further argued by counsel for appellants in substance (a) that an oral agreement for partition or division of land by joint owners is void under the statutes of fraud; (b) that one remainderman cannot hold adversely as against another; and (c) that if it were otherwise the evidence is not sufficient to support appellees' claim of title by adverse possession.

It seems to be well settled that an oral contract for the partition of lands comes within the statute of frauds. Ky. Stats., sec. 470; Green v. Elliott County Board of Education,. 244 Ky. 500, 51 S. W. (2d) 459; Sampson v. Cottongim, 249 Ky. 670, 61 S .W. (2d) 309; Henderson v. Clark, 163 Ky. 192, 173 S. W. 367; Garvin v. Threlkeld, 173 Ky. 262, 190 S. W. 1092; Holbrooks v. Wright, 187 Ky. 732, 220 S. W. 524. However, the two latter cases are cases wherein there was a bona fide dispute as to the location of a dividing line between the lands and it was held in effect that an oral agreement fixing the line by marking same or building a fence thereon was not prohibited by the statute of frauds because the parties did not thereby undertake to or pass title as must be done by written contract or conveyance. Those cases are applicable at least by analogy because in this instance appellees

claim to have acquired title to the land under the alleged oral agreement.

The question as to whether in the alleged circumstances appellees could acquire title by adverse possession against the joint remaindermen while the life tenant was living presents a more serious problem. Counsel for appellees contends that they could do so and cites two cases from this jurisdiction as supporting that theory. However, in the first case it appears that the partition agreement was entered into after the termination of the life estate and in the latter the particular question was not raised or determined except by possible implication.

The exclusive right of possession to all of the land in controversy was in Sarah Barnett during her life and she did actually occupy it until her death. Neither appellee Winfield Barnett, his brother nor the latter's widow or heirs had any right of entry until the life estate terminated. Generally speaking the possession or occupancy of real estate will not be considered adverse as to a remainderman who during its continuation had no right of entry and a presumption of a grant by adverse possession for the required statutory period will not arise where the person against whom it is claimed could not have legally prevented or interrupted it. See 1 Am. Jur. 805. However, the conclusion we have reached concerning contention (c) renders it unnecessary to determine contention (b).

The only direct and positive evidence that the alleged agreement or contract was entered into by appellee and his brother is that of appellee and the court sustained objection to this evidence and rightfully so because appellee was attempting to testify as to a transaction with a brother who was dead. Civil Code of Practice, sec. 606. There was also some evidence of witnesses called by appellee as to statements made by Mrs. Sarah Barnett concerning the alleged agreement between appellee and his brother. In the circumstances we think this evidence was inadmissible. Cf. Davis v. Davis, 211 Ky. 711, 277 S. W. 1025. With this evidence excluded the evidence for appellee merely tends to show that some years ago a fence was erected along what he claims was the division line as agreed upon between the

land of himself and his brother and thereafter he lived with his mother on the side claimed by him, and his brother lived upon and cultivated the other side; that James Barnett had made some statements concerning the division line; and that when a pipe line which was being laid under the land claimed by appellees reached this division line James Barnett objected to its going further unless he was paid something. Some witnesses for appellees testified that they heard some talk between Sarah Barnett and her two sons concerning the division line and one witness stated that some contention arose between Sarah Barnett and her son James about cultivation of the land and it was agreed that he should take the land on the side of the alleged division line where he resided. There is evidence for appellants to the effect that the fence which appellee alleged was built along a division line agreed upon by him and his brother replaced an older fence that had been there for years; that Jack Barnett had purchased the land in different tracts; that James Barnett lived upon the Brown tract purchased by his father and that the old fence was the dividing line between the Brown tract and other lands of Jack Barnett. While one of the sons of James Barnett who apparently had differences with his mother and the other children and had lived with appellees testified that he heard some talk between Mrs. Jack Barnett and her sons concerning the division line, the other brothers testified that there was no such agreement or at least that they never heard of it or of the line claimed by appellants being recognized as a dividing line between the land of their father and appellees; that their father made objection to the continuance of the pipe line at the instance of his mother and because it would damage crops. Neighbors who had known the Barnetts all their lives and some of whom lived upon adjoining farms testified that they never heard of such agreement or of the line in question being regarded as a division line between the land of appellants and appellees. The evidence clearly conduces to show that the boundary claimed by appellees contains practically twice as much as that which is alleged his brother took under the agreement and further that on the whole it is of better quality and has a gas well located on it, paying royalties or rentals in the sum of about $50 per annum. There is also evidence that about 12 or 13 years before the death of Sarah Barnett appellees left the land in

controversy and thereafter lived on a farm some distance away; that after their departure sons of James Barnett cultivated the land, looked after the fences, etc., on both sides of the alleged division line under agreement with their grandmother and that appellees exercised no control over the land.

In the circumstances and apart from any question of contract, no presumption favorable to appellee would arise from his occupancy or cultivation of the land claimed by him during the continuation of the life estate. On the other hand there is every presumption that such occupancy was in subordination to the right and title of his mother and the joint remaindermen since their relations were such as to preclude any idea of hostile possession which would ripen into title. In order to have any basis for a plea of adverse possession appellees assert a contract prohibited by the statute of frauds and which they claim was made with a brother whose lips are sealed by death.

In Mounce v. Hargis, 211 Ky. 761, 278 S. W. 107, 108, it is said:

"We have held in an unbroken line of opinions that, since the acquisition of title by adverse possession was an appropriation of the title of the true owner without compensation, the facts necessary to perfect it must be clearly and unequivocally shown * * * * ."

In circumstances such as we have before us, it would require great preponderating weight of evidence of a strong, clear and convincing character to support the claim of adverse possession. On the whole we unhesitatingly conclude that the evidence is insufficient to support the chancellor's finding that appellees had acquired title to the land described in their pleading by adverse possession.

Wherefore the judgment is reversed with directions to set it aside and for proceedings in conformity with this opinion.