# Gillihan et al. v. Morguelan.

Feb. 16, 1945.

A. M. Marret for appellants.

S. Arnold Lynch for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming in part, reversing in part.

Appellee, Louis E. Morguelan, as plaintiff below, brought this action in ejectment against appellants, R. E. Gillihan, Lester Marks and Irvin Sotsky, to obtain possession of a piece of business property in Louisville known as No. 507 West Broadway, and to recover $125 per month rent from October 20, 1943, until appellants surrendered possession. Appellants' substituted answer and counterclaim as amended averred that D. J. Lincoln as either the owner of the property or as agent of such owner leased same to them and that appellee at the time he purchased the property knew they held a lease thereon and that he purchased it subject to their lease

and is estopped to deny appellants are his tenants. A reply completed the issue.

At the conclusion of all the evidence the court instructed the jury to find that appellee was entitled to the possession of the property but refused him damages. Appellants appeal from the judgment entered on the verdict and appellee prosecutes a cross-appeal from so much of the judgment as refused him damages.

The evidence, with but little contrariety, shows these facts: William C. Hoefflin acquired the property in controversy, and the adjoining storeroom known as No. 509 West Broadway, by a deed dated January 7, 1928, in which he assumed a vendor's lien of $40,500 in favor of Katherine Lincoln, the life tenant, with remainder to her brother, D. J. Lincoln. Hoefflin was unable to meet the payments on the property and on January 6, 1932, conveyed both pieces without consideration and "as a matter of convenience" to his nephew, Wesley Snawder, who resided in Cleveland, Ohio. Wesley died intestate July 6, 1935, leaving his widow and his father, Peter H. Snawder, as his only heirs. Hoefflin continued in control of the property and as the rents were collected he turned them over to Lincoln, who appears to have had charge of his sister's business. The taxes became in arrears as well as the interest and payments due on the lien notes Hoefflin had assumed and at the request of Lincoln, Hoefflin signed a letter dated July 15, 1940, written by Lincoln and addressed to William E. Meyer & Co., real estate agents in Louisville for Lincoln, which reads:

"The premises owned by Wesley Snawder, deceased, for whose heir and wife I am agent, at 507-509 West Broadway, Louisville, Ky., are at present occupied by Southern Auto Finance Company, at a rental of $50.00 per month, in advance, from July 1st, 1940, and

"Hyman Morguelan, at a rental of $100.00 per month, from July 20th, in advance, of which he is to pay me the sum of $50.00 per month.

"You are hereby authorized to collect these rents from the said tenants until different arrangements are made, and credit the sum of $100.00 per month to the account of D. J. Lincoln, who is the agent for and represents the previous owner of the property, who is still interested to the extent of holding a lien on it.

"I will notify the present tenants to pay such rentals to you."

After signing this letter Hoefflin relinquished all control and management of the properties and turned them over to Lincoln who took full charge and through his agents, Meyers & Co., looked after the repairs, insurance and rentals. Meyers & Co. as Lincoln's agents, leased No. 507 to R. E. Gillihan on Jan. 3, 1941, for a term of one year. On November 19, 1941, the same firm executed a second lease in the name of Lincoln on the same property to Gillihan covering the year 1942. Gillihan operated a barber shop and remained in possession of the leased premises ninety days after January 15, 1943, which under the statute renewed his lease to January 15, 1944. Hoefflin informed Lincoln that he was the owner of these properties at the time he turned the control of same over to Lincoln, and Hoefflin knew the latter was renting to Gillihan because he was in Gillihan's barber shop and complimented him on the appearance of the premises.

On August 13, 1943, Gillihan transferred the lease to the appellants Lester Marks and Irvin Sotsky with the written approval of Lincoln acting through his agents, Meyers & Co., and on that day Lincoln by these agents executed a lease to Gillihan's assignees, Marks and Sotsky, for one year beginning January 15, 1944.

These various leases were pleaded in the amended and substituted answer and counterclaim wherein it is averred that Lincoln at the time they were executed was either the owner of the property or was the agent of the owner and as such was authorized to enter into the lease contracts. It is further averred that appellee had knowledge of these tenancies and that the leases were transferred to him. By an amended answer appellants pleaded an estoppel against appellee.

On September 2, 1943, appellee and his brother, Hyman Morguelan, made Maurice Garfein and Edward J. Clem, real estate brokers, an offer in writing to purchase both properties for $30,500 which was accepted by Clem as agent for the seller. The written offer which was signed by both the Morguelans recites: "Rents to be pro-rated & leases assigned when deal is closed." It was testified by both Garfein and Clem that such clause is customarily inserted in all contracts for the sale of

real estate. Appellee, Louis Morguelan, testified that he knew both pieces of property were rented at the time the purchase was made.

After the contract to purchase was signed, Patrick H. Snawder and Irene Snawder deeded No. 507 West Broadway to Louis Morguelan; Katherine Lincoln and her brother executed to the purchaser a quitclaim deed for the purpose of releasing their lien; and Hoefflin quitclaimed to Louis Morguelan all his interest in the property. The sale commission was deducted from the purchase price, Katherine Lincoln received the amount of her lien, and the balance of the proceeds was paid to Hoefflin.

It is contended by appellants that they held a binding lease on this property which did not expire until Jan. 15, 1945, and as appellee knew they were in possession and as his contract of purchase recited he took subject to the existing lease, he is estopped from ousting them. Appellee insists that the lease was not executed by the owner or the agent of the owner, but by a mere lienholder, and when his lien was satisfied his authority over the property ceased and the rental contract he had executed terminated. It is further insisted by appellee that as the tenants did not change their position by reason of his action in purchasing the property subject to the lease, he is not estopped from denying their tenancy.

We agree with appellee that no estoppel has been worked against him by reason of his purchasing the property subject to the lease since appellants did not change their position to their prejudice by reason thereof. Indeed, appellants did not change their position at all and have not been harmed in the least on account of appellee's contract of purchase providing that he bought the property subject to the lease, therefore appellee is not estopped. Hodge Tobacco Co. v. Sexton, 166 Ky. 219, 179 S. W. 36, 38; Campbell v. Salyer, 290 Ky. 493, 161 S. W. 2d 596, 599. However, we are clearly of the opinion that there was a ratification by Hoefflin of the leases executed by Lincoln, and such being the case the leases became binding on Hoefflin, and as appellee purchased subject thereto, he cannot oust appellants.

"Ratification" is defined in Restatement of the Law of Agency, sec. 82, p. 197 thus:

"Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."

And sec. 87, p. 211, of that same text says the affirmance must be by the principal or if no principal was identified, then by the one for whom the agent intended to act.

The principal distinction between estoppel and ratification is that in estoppel one is induced to act to his prejudice, while the substance of ratification is the subsequent confirmation of one's previous conduct. Liability resulting from estoppel arises despite intention because the other party will be prejudiced, but liability from ratification arises from intention, express or implied. 2 Am. Jur., sec. 214, p. 171.

The pleadings set out the various leases and averred that in executing them Lincoln was acting as the owner or as the agent for the owner. The proof shows that at the time the leases were made Hoefflin was the real owner of the property, which fact was known to Lincoln who refused to accept a deed Hoefflin tendered him covering the property. Hoefflin was aware of the lease contracts made in Lincoln's name and he knew that the rent received therefrom was being used to meet taxes and repairs and the balance was being applied on the lien he had assumed. Hoefflin was in the barber shop while Gillihan was operating it under a lease from Lincoln and he complimented Gillihan on the condition of the premises. For almost three years Hoefflin acquiesced in Lincoln's acts in leasing this property through Meyers & Co., who acted as Lincoln's agents. The ratification of an unauthorized act of an agent may be express or it may be implied from the acts and conduct of the principal. Detroit Fidelity & Surety Co. v. Gilliam, 237 Ky. 425, 34 S. W. 2d 971; Crump v. Sabath, 261 Ky. 652, 88 S. W. 2d 665; Hofgesang v. Silver, 232 Ky. 503, 23 S. W. 2d 945, 68 A. L. R. 1481.

Surely, if Hoefflin still owned this property he could not successfully contend that appellants did not hold a valid lease thereon since his conduct ratified the unauthorized acts of his agent in leasing same, and his vendee, the appellee, who purchased the property subject to the leases, is in no stronger position than was Hoef-

flin. Instead of directing a verdict in favor of appellee the trial judge should have directed one in favor of appellants since there is no contrariety in the evidence showing a ratification by Hoefflin of the lease contracts his agent, Lincoln, made.

Having arrived at this conclusion it becomes unnecessary to consider the other questions raised in the briefs. The judgment is affirmed on the cross appeal and is reversed on the appeal for proceedings consistent with this opinion.