## Brittenum et al. v. Cunningham et al.

April 29, 1949.

132

White & Clark, J. W. T. Falkner and J. W. Price for appellants.
Ben B. Wright for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

In June 1883, Morgan Hopson and wife executed a mortgage on a 415¼ acre tract of land in Trigg County to W. J. Fuqua to secure a promissory note in the sum of $2,000. The mortgage was duly recorded.

On March 12, 1889, while this mortgage was still outstanding and unpaid, Morgan Hopson, without consideration, transferred the tract of land to his daughter-in-law, Mary Fonta Hopson, and at her death to the heirs of her husband, Joshua Hopson, son of Morgan.

The promissory note and the mortgage securing the note, originally made to Fuqua, were finally transferred on March 8, 1897 to J. Hoy Hopson, another son of Morgan Hopson.

On the 16th day of March 1897, J. Hoy Hopson filed a foreclosure suit asking for sale of the 415¼ acre tract of land. The court gave judgment and ordered the property sold, but before consummation of sale Morgan Hopson died. J. Hoy Hopson then filed a petition of revivor and amended his original petition joining in the foreclosure suit as defendants the administrator of Morgan Hopson's estate and heirs of Morgan Hopson, including Joshua Hopson, husband of Mary Fonta Hopson, but did not join as defendants Mary Fonta Hopson nor the heirs of Joshua Hopson. On this petition for revivor and amended petition, the court gave

judgment against the heirs of Morgan Hopson and his administrator, sustained the lien, and ordered the tract of land sold by the master commissioner.

The land was appraised at $1600 and brought only $1400 at the judicial sale. J. Hoy Hopson, whose debt at the time was $1622.83, became the purchaser. The master commissioner executed deed to J. Hoy Hopson which was examined and approved by the court.

On September 8, 1898, J. Hoy Hopson was put in possession of the land and he and his successors in title have lived on the entire tract, farmed it, improved it, and held actual, open, notorious, and exclusive adverse possession of the whole of the tract to a well marked and defined boundary since that time.

This action was brought in December 1947, 49 years after the master commissioner's deed above. Mary Fonta Hopson, her husband, Joshua Hopson, and their children were in possession of the land when the suit was brought against Morgan Hopson to foreclose the mortgage. As stated above, Joshua Hopson was made a party defendant and was before the court. No defense was made to the suit by Joshua Hopson, Mary Fonta Hopson, or anyone for the unknown heirs of Joshua Hopson.

Joshua Hopson, husband of the life tenant, died October 21, 1900. Mary Fonta Hopson died December 28, 1940. The appellants are their surviving children and heirs at law of Joshua Hopson. No action of any kind was taken by Mary Fonta Hopson during the life of her husband nor for the 40 years that she survived him as his widow. No action of any kind was ever taken by any of the appellants or anyone for them although the elder appellant became 21 years of age in 1904 and the younger 21 years of age in 1917.

Appellants filed this action on December 15, 1947. Amended petition was filed on May 4, 1948, wherein they alleged that under deed dated March 12, 1889, properly recorded their grandfather, Morgan Hopson, conveyed to the mother of the plaintiffs, Mary Fonta Hopson, a life estate in the tract of land involved in this action with remainder to the heirs of their father, Joshua; that their mother, Mary Fonta Hopson, died

December 28, 1940; and that their father, Joshua Hopson, died October 21, 1900 leaving as his only heirs at law the appellants here and a brother, Josh Hopson, who in 1947 conveyed his undivided interest in the real estate to his sister, Mrs. Mollie Hopson Brittenum, one of appellants. They alleged that they are the sole owners of the property and entitled to immediate possession of the same and that appellees are in possession and wrongfully claiming the ownership thereof. They prayed to be adjudged the absolute owners of the tract of land, entitled to immediate possession of same, and that their claim to the title thereto be quieted.

By answer appellees claimed under the commissioner's deed to J. Hoy Hopson. They alleged that even if Mary Fonta Hopson was not made a party to the foreclosure suit she and the heirs took subject to the mortgage; that the property brought less than the mortgage debt and costs, and therefore there was no equity due them and that if they ever had any right to redeem by virtue of their not being made parties to the suit that the time for the redemption was long gone; that they never offered to redeem and do not now offer to redeem same; and that appellants at most had a mere derivative right from their ancestor who executed the mortgage and from their father, Joshua Hopson, who was made a party to the suit.

Appellees further pled and claimed that, notwithstanding their claim under the mortgage and deed, they and their predecessors in title took possession of the land under the master commissioner's deed and have held same for more than 49 years in actual, open, notorious, adverse and continuous possession, all with the full knowledge of the life tenant and the appellants. They pled and relied on all the different statutes of limitation, including KRS 413.010, 413.020, 413.030 and 413.070. They further pled laches and equitable estoppel.

Appellants filed a general demurrer to this answer. After hearing argument the court adjudged that the above mentioned statutes barred recovery by appellants. Appellants declined to plead further. Their petition and amendments thereto were dismissed. They prosecute this appeal from the judgment of the court.

Appellants insist that the court erred in so ruling

since the statutes of limitation did not begin to run against them until the death of their mother, the life tenant. Ordinarily statutes of limitation do not run against remaindermen. The general rule is stated in 33 Am.Jur., Life Estates, Remainders, Etc., Section 187:

"Since the remainderman has no right of possession until the particular estate is terminated, the general rule is that laches, estoppel, or the statute of limitations will not run against a remainderman prior to the termination of the life tenancy, or, as some writers say, till the life estate falls in."

However, there are exceptions to this general rule. See Section of Am.Jur. above.

Two outstanding examples of cases coming under exceptions are, first, where the life tenant undertakes to dispose of, or enlarge upon, the estate and brings home to the remaindermen notice of the adverse holding in such manner as to indicate a repudiation of life tenancy. The other is where the person, under whom the remainderman asserts a derivative right, undertakes to transfer title to the real estate, in which case possession thereunder for the statutory period bars the remainderman's right to recover the land.

The first exception above is not applicable here. Neither the life tenant, nor anyone claiming under her, has claimed this land as against the remaindermen. It is well to keep in mind that the claim of the appellees did not arise out of, through, or under the life tenant. They claim in fee under color of title by a court deed and against both the life tenant and remaindermen. As noted above, at the time of the commissioner's sale the life tenant, her husband, and appellants lived on the land. Possession was surrendered to the purchaser soon after the commissioner's sale. No doubt the life tenant knew full well that any interest she had in the place was subject to the mortgage placed on the property by her grantor. By the instrument from her grantor she knew she had a life estate and upon the foreclosure sale she abandoned any claim that she had thereto, if any she had, and for 40 years remained quiet. Her children also knew of this abandonment. They knew also of the possession of the land by the purchaser at the foreclosure sale and those claiming title under him. They

too remained quiet not only for the period of 40 years during the lifetime of their mother but for almost 7 years after her death. True, under the general rule the remaindermen who have no right of possession are not required to bring an action to protect the remainder estate and the statutes do not run. But clearly in the instant case, there was a "falling in" of the life estate.

The basis of the general rule above is that the life tenant is presumed to be the person in possession, and an uninterrupted continuation of the relation of life tenant and remaindermen is presupposed. Hence, no cause will arise until the death of the life tenant. But here the title is in a stranger and was adverse to both the remaindermen and life tenant. Being in a position to know the situation, the remaindermen could not possibly be deceived in any way by the character of the possession claimed by appellees.

To look at it another way, appellants' right of possession accrued after the right of the life tenant had been extinguished. That right may be extinguished other than by the death of the life tenant, in which event the remaindermen's right of possession will be accelerated. If the life tenant had the right of possession at the time of the commissioner's sale, and that right continued because of alleged failure to make the life tenant a party to the foreclosure action, and soon after the sale the life tenant moved off of the land, abandoned it, and did nothing about it for the period of limitations, would this not effect a termination of the life estate and start the statute running against the remaindermen? If the 15 year statute would be applicable and run against the life tenant, then the statute begins to run against the remaindermen at the end of the first 15 year period. Then another 15 years could be tacked on, making a total of 30 years and still nothing done by either the life tenant or the remaindermen. As stated above the time has been about 49 years—time for yet another 15 year period to run and still nothing was done within the third 15 year period.

Here a purchaser under a commissioner's deed dispossessed the life tenant, took full and complete possession of the property and has held same far beyond the statutory period, all of which the remaindermen had

actual knowledge. Under such circumstances the life tenancy was in effect terminated as much so as if the life tenant had died. See Superior Oil Corporation v. Alcorn, 242 Ky. 814, 47 S.W. 973.

The court properly overruled the demurrer to defendants' answer.

Thus concluding, it is unnecessary to decide whether or not the life tenants and remaindermen were necessary parties to the foreclosure suit.

The judgment is affirmed.