Mamie McDONALD, Appellant,

v.

Charles BURKE et al., Appellees.

Court of Appeals of Kentucky.

May 20, 1955.

As Extended on Denial of Rehearing

March 16, 1956.

Dailey & Fowler, Frankfort, for appellant.

Leslie W. Morris, Marion Rider, Frankfort, for appellees.

MILLIKEN, Judge.

The appellant, Mamie McDonald, brought this action in ejectment in the Franklin Circuit Court to recover from the appellees, Charles Burke and Dorothy Burke, his wife, possession of a house and lot located in the City of Frankfort. Both the appellant, plaintiff below, and the appellees, defendants below, filed motions for summary judgment together with supporting documents. The trial court overruled plaintiff's motion, sustained defendants' motion, and dismissed plaintiff's petition.

The facts are as follows: On November 22, 1930, the appellant's brother, Lee Irvine, conveyed to her seven parcels of real estate, reserving in himself a life estate, with remainder in fee simple to the appellant. This deed, which included the lot in controversy, was duly recorded on the day it was executed. Subsequently, on September 20, 1934, the appellant's grantor, Lee Irvine, without the appellant joining with him, in consideration of $1,800 cash, purported to convey the involved lot in fee simple with a covenant of general warranty of title to C. L. McQueen and Lillie McQueen, his wife. The second deed contains no reference to the fact that the grantor had previously conveyed this property to the appellant, reserving only a life estate unto himself. But both deeds recite that the grantor acquired this lot from one Wright and his wife by deed of April 12, 1927, and thus the trial court found that the property was derived by the litigants herein from a common source of title. The record shows that some three or four days before he made the deed to the McQueens, Lee Irvine told the appellant, his sister, that he had sold the property to the McQueens and was going to make them a deed. She made no objection to her brother making the sale. The appellant knew the McQueens, lived near them, and passed their

house almost daily during the nineteen years the McQueens lived on the property. Yet, not until this suit was filed did she inform them that her brother was only a life tenant without power to convey a fee simple title.

The life tenant, Lee Irvine, died on January 12, 1939, almost five years after he had conveyed this lot to the McQueens in 1934. This suit was filed November 24, 1953, barely within fifteen years from the date of the death of the life tenant. McQueen died testate in 1943, devising his interest in the property in controversy to his wife, Lillie McQueen, who, on November 6, 1953, purported to convey the same in fee simple to the appellees. As did the McQueens, the appellees, Charles Burke and Dorothy Burke, accepted a general warranty deed without searching the Franklin County Court deed books where the deed showing that Lee Irvine had only a life estate in this property had been duly recorded upon its execution in 1930.

In the trial court the appellant, Mamie McDonald, contended that the statute of limitations began running against her as a remainderman from January 12, 1939, the date of the death of her brother as life tenant—the date she was entitled to possession of the property. On the other hand, the appellees contend that since the appellant admitted in her deposition that her brother, Lee Irvine, told her before he transferred the property to the McQueens that he had sold it to them, such knowledge had two effects upon her right to bring this action in ejectment: (1) It made the fifteen year statute of limitations, KRS 413.-010, begin to run from the date of the deed to the McQueens in 1934 instead of the date of death of Lee Irvine in 1939, because she was informed in 1934 of the conveyance; and (2) it estopped her from claiming any interest in the property.

The trial court held: (1) That the fifteen year statute of limitations began to run from the date of the deed to the McQueens in 1934, since at that time the appellant, Mrs. McDonald, was informed of the conveyance; and (2) that by virtue of the fact that she knew of the purported sale, she, by her actions, was estopped from asserting any rights in the property. On the latter point it must be pointed out that Mrs. McDonald never had any conversation with the McQueens regarding the transaction at any time prior to their purchase of the property. She merely refrained from informing them of her interest as a remainderman, which interest was a matter of public record. The defendants also pleaded laches, which defense was not ruled on in the trial court nor briefed by the attorneys representing either the appellees or appellant in this appeal.

■ Although the McQueens and the Burkes were in continuous, uninterrupted possession of the property from 1934 until the filing of the suit in 1953, such possession, taken alone, did not ripen into a greater property interest than was conveyed by the 1934 deed from Lee Irvine. It is an anomaly of the law that the common law courts, without the aid of a statute, "developed a doctrine by which prescriptive easements could be obtained by long use, but they never developed any similar method of acquiring estates in land by adverse possession. * * * Thus * * * a right of action that has existed for longer than the statutory period may still be exercised if the defendant did not claim adversely, as that word has been defined." Restatement of the Law of Property, Vol. 2, page 892.

■ In the case at bar, the McQueens obtained from the life tenant, Irvine, only the estate he actually had, and not the fee simple he pretended to convey. KRS 381.-150. Nor can we construe the possession of the McQueens and Burkes as adverse to the appellant's remainder interest, for the McQueens and Burkes were constructively notified by the recordation of the appellant's deed that the latter had a remainder interest, and they did nothing to signify to the appellant that they were claiming adversely to her.

■■ In any event, "The general principle with respect to all typical statutes of limitations is that the period of adverse possession does not begin to run until

the future interest becomes possessory. This is for the reason that the owner of the future interest, prior to that time, has no right to possession and so has no cause of action. While the doctrine of title by adverse possession involves something more than the mere barring of a remedy, there must, as a rule, be a remedy available to the owner of an interest before a period of adverse possession begins to run against him. * * * In a few jurisdictions it has been held that, since the owner of a future interest can bring an action to have his title quieted as against an adverse possessor before his interest becomes possessory, therefore, the period of adverse possession begins to run as soon as the right to have the title quieted arises. Decisions in Iowa and Nebraska have taken this position. But recently the Nebraska court has reversed its position and held that the right of action to have the title quieted does not start the statute running. This is in accordance with the weight of authority, and is believed to be the better view. For if the owner of the future interest is compelled to bring a quiet title action before his interest becomes possessory, on penalty of losing his title to the adverse possessor, it means that the possessory action such as ejectment or trespass, may never be available to him. Yet these possessory actions are commonly regarded as the principal remedies which the law provides against adverse possessors." American law of Property, Vol. 1, Section 4.113, pages 601, 602, 604, 605. See, also, Superior Oil. Corp. v. Alcorn, 242 Ky. 814, 47 S.W.2d 973; Lane v. Taylor, 287 Ky. 116, 152 S.W.2d 271.

We have been unable to find any Kentucky decision which either authorizes or requires a remainderman, such as appellant, to file an action to quiet title or to remove a cloud upon title before his remainder interest has become a possessory one although there is dicta to that effect in Superior Oil Corp. v. Alcorn, supra. As stated in the Restatement of the Law of Property, Section 222, at page 903:

"It might be reasoned that this fact should require him to avail himself of these rights of action and that the statutory period should thenceforth run, not only upon these equitable and statutory proceedings, but also upon the action of ejectment which might be brought when the interest becomes present. However, these equitable and statutory proceedings are considered to be created for the *additional* protection of the owner of the future interest; and to hold that their existence causes the statute of limitations to run upon ejectment proceedings would in considerable measure reduce the protection accorded to the future interest holder when his estate becomes present. It is therefore immaterial in computing the statutory period in an action of ejectment or similar proceeding that, before the plaintiff's estate became a present interest, he could have brought suit to quiet title or could have commenced a statutory proceeding analogous to one of these." See Example 5 on page 906.

■ It appears to be the law in Kentucky that the remainderman, appellant, does not have to bring an action to protect his interest until he is entitled to possession, and it naturally follows that the statute of limitations does not begin to run until that time. Superior Oil Corp. v. Alcorn, supra; Murphy v. Boling, 273 Ky. 827, 117 S.W.2d 962, 117 A.L.R. 1373; Barnett v. Barnett, 283 Ky. 710, 142 S.W.2d 975; Lane v. Taylor, 287 Ky. 116, 152 S.W.2d 271; Brittenum v. Cunningham, 310 Ky. 131, 220 S.W.2d 100. It is our conclusion, therefore, that the statute of limitations in the case at bar did not begin to run until the appellant remainderman was entitled to possession of the premises in 1939. Furthermore, for the life tenant to make a deed purporting to convey the fee is no such repudiation of a life estate as would start the running of the statute of limitations. Murphy v. Boling, 273 Ky. 827, 117 S.W.2d 962, 117 A.L.R. 1373.

We therefore conclude that the appellees did not establish a defense of limitations, and the trial court erred in granting them

such a judgment on that ground. Whether a summary judgment should have been granted appellees on their plea of estoppel is another question.

The appellees' plea of estoppel is based on a number of factors such as Mrs. McDonald's knowledge of her brother's 1930 purported sale to the McQueens before it was executed; her apparent knowledge of the sales price of the property; her knowledge of the improvements the McQueens made on the property; her failure to pay taxes on the property after her brother's death in 1939 and her failure to list it for assessment; her failure to indicate in any way her intention to claim the property after her brother's death in 1939 until she filed the present suit in 1953; and, finally, the inference from the purported conversation between Mrs. McDonald and her brother, in the presence of a witness in 1930, that Mrs. McDonald got part of the proceeds from the sale to the McQueens.

■ In moving for summary judgment, Mrs. McDonald took the view that there was not sufficient evidence of estoppel to overcome her recorded deed. On the other hand, the appellees took the view that they presented enough evidence of estoppel to entitle them to a summary judgment in their favor. In our opinion there are triable issues of material fact presented in this record and neither party was entitled to a summary judgment. CR 56.01 et seq. We say this because the doctrine of equitable estoppel usually is based on the evidence presented to the court and the inferences to be drawn therefrom. Equitable estoppel is thus defined in 3 Pomeroy, Equity Jurisprudence (5th Ed.) Section 802:

> "Equitable estoppel in the modern sense arises from the *conduct* of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience."

See Cadillac Oil & Gas Co. v. Harrison, 196 Ky. 290, 244 S.W. 669; Louisville Joint Stock Land Bank v. McMurry, 278 Ky. 238, 128 S.W.2d 596. Even acquiescence in a transaction or state of affairs is well recognized as a ground of equitable estoppel. Insofar as pertinent here, this concept is well analyzed in 19 Am.Jur., Estoppel, Section 62:

> "The doctrine of equitable estoppel is frequently applied to transactions in which it would be unconscionable to permit a person to maintain a position inconsistent with one in which he, or those by whose acts he is bound, has acquiesced. Declarations or conduct which might not of themselves amount to an estoppel may become such by acquiescence. Estoppel by acquiescence is, obviously, closely related on the one hand to estoppel by consent, and, on the other hand, to estoppel by silence or inaction, or by delay. In fact it is often impossible to distinguish clearly between such estoppels, and the courts in many instances use the term 'acquiescence' as covering or including all the others. 'Acquiescence,' as the term is here used, however, refers to an implied consent and need not involve anything in the nature of a positive affirmation; and while, as has already been pointed ed out, silence or inaction may, under some circumstances, amount to acquiescence, it does so only where the circumstances are such as to afford some ground for believing that acquiescence was intended. The rule is well recognized that where a party with full knowledge, or with sufficient notice or means of knowledge, of his rights and of all the material facts remains inactive for a considerable time or abstains from impeaching a contract or transaction, or freely does what amounts to a recognition thereof as existing, or acts in a manner inconsistent with its repudiation and so as to affect or interfere with the relation and situation of the parties, so that the other party is induced to suppose that it is recognized, this amounts to acquiescence and the transaction, al-

though originally impeachable, becomes unimpeachable."

In Kentucky this doctrine has been recognized in Simpson v. Yocum, 172 Ky. 449, 189 S.W. 439; Cawood v. Middleton, 202 Ky. 745, 261 S.W. 242. Silence alone may constitute acquiescence sufficient to raise an estoppel. Schweitzer v. Wagner, 94 Ky. 458, 22 S.W. 883; Chestnut v. Allen, 282 Ky. 703, 139 S.W.2d 729; Pomeroy, Equity Jurisprudence (5th Ed.) Vol. 3, Section 818.

It is the contention of Mrs. McDonald that there can be no estoppel unless the conduct of a party has misled another to his prejudice, and that appellees did nothing in this case in reliance upon her conduct. We are unwilling to say that the acceptance of the deed in 1934 did not constitute a change of position on the part of the McQueens in reliance upon her silence, or that the payment of taxes by the McQueens on this property after the death of the life tenant in 1939 was not a change of position by the McQueens in reliance upon the conduct of Mrs. McDonald. Acquiescence, like adoption, or affirmance, or ratification, is not dependent upon a specific change of position by the party relying upon estoppel. Mahoning Inv. Co. v. United States, 3 F.Supp. 622, 78 Ct.Cl. 231. See, also, Rothschild v. Title Guarantee & Trust Co., 204 N.Y. 458, 97 N.E. 879, 880, 41 L.R.A.,N.S., 740; Dugan v. O'Donnell, C.C., 68 F. 983; Steinbeck v. Bon Homme Mining Co., 8 Cir., 152 F. 333; 3 Pomeroy, Equity Jurisprudence, Section 965.

In this case we are principally concerned with the question of whether Mrs. McDonald's conduct constituted a recognition of the absolute ownership of this property by appellees and their predecessors in title. The dispossessing of appellees is the ultimate prejudice to which they should not be subjected if, in fact, Mrs. McDonald acquiesced in or ratified the transaction by which her brother, in 1934, undertook to convey a fee simple title to the property and if, in fact, it would be unconscionable to enforce her claim.

What we have just said responds to Mrs. McDonald's argument that since appellees and their predecessors in title had constructive notice of her recorded deed, they are not in a position to contend that they are misled into a change of position. Constructive notice does not necessarily prevent a party from relying upon estoppel. Virginia Iron, Coal & Coke Co. v. Campbell, 105 S.W. 129, 32 Ky.Law Rep. 40.

There was some evidence presented on the motion for summary judgment which, coupled with the course of conduct on the part of Mrs. McDonald, may justify an inference that she had received part of the consideration paid by the McQueens for this property. This is simply another aspect of the issue of whether she acquiesced in and/or ratified the sale of her interest in the property by her brother. Acceptance of a part of the consideration for a conveyance would be so inconsistent with a claim of ownership as to give rise to an estoppel. Jones Colliery Co. v. Hall, 220 Ky. 706, 295 S.W. 1033. Even if this occurred sometime subsequent to the conveyance, it would be evidence of ratification, which, of course, is simply another aspect of acquiescence. See Gillihan v. Morguelan, 299 Ky. 671, 186 S.W.2d 807. In that case it was pointed out that ratification is the affirmance of a prior act professedly done on the party's behalf which, though not originally binding, is given effect as if originally authorized. An excellent and comprehensive note on the question under consideration appears in 50 A.L.R. 668.

From the foregoing discussion it is apparent that equitable estoppel may be based upon varied combinations of facts. Their full development is necessary to the proper determination of whether this defense is established. The situation shown by the record in this case does not make it an appropriate one for disposal by summary judgment. Since the determination of the rights of the parties will depend upon reasonable inferences to be drawn from their conduct, it is essential that the case be tried on its merits. Appellees have not had their day in court except with respect to the one

issue of limitations, which we have decided does not constitute a defense to the action against them. On the other hand, Mrs. McDonald has not had an opportunity to explain her course of conduct.

We are of the opinion that the trial court erroneously granted appellees a summary judgment, and furthermore that one should not have been granted Mrs. McDonald. Unless other issues are developed in the case, it appears the only issue to be tried is that of estoppel. Since this is an equitable defense, it should be tried by the court. The method of trial is, of course, within the chancellor's discretion, and he may call upon the services of an advisory jury.

The judgment is reversed for proceedings consistent with this opinion.