**Robert E. FIELD et al., Appellants,**

v.

**Donald E. LLOYD et al., Appellees.**

**ASHLAND OIL & REFINING COMPANY, Appellant,**

v.

**Donald E. LLOYD et al., Appellees.**

Court of Appeals of Kentucky.

March 13, 1970.

Rehearing Denied June 5, 1970.

Thomas E. Sandidge and James S. Sandidge, Sandidge & Sandidge, Owensboro, for appellants.

Frank N. King, Jr., John L. Dorsey, William L. Sullivan, Dorsey & Sullivan, Henderson, for appellees.

CULLEN, Commissioner.

Under the will of J. W. M. Field, who died in 1903, his daughter Jessie Deane Field was given a life estate in a portion of his estate, with remainder to her children, or if she should die without descendants, then to the testator's surviving children and their descendants. In 1945 a purported trustee, in an *ex parte* proceeding in the circuit court, was authorized to and did execute a conveyance of the *fee* in the portion so devised, to the predecessor in title of Donald Lloyd and wife, who are the appellees in the two appeals here before us. Jessie, alive but childless, was not made a party to the proceeding. In 1967, some years after the appellees had taken a deed from the trustee's vendee, the appellees contracted to sell a part of the land to Ashland Oil & Refining Company, which is the appellant in one of these appeals. The attorney who examined the title for Ashland declined to approve the title because he questioned the validity of the trustee's 1945 conveyance. Ashland thereupon refused to consummate the purchase from the appellees. The latter then brought an action against Ashland, for specific performance. Simultaneously, the appellees brought a quiet-title action against Jessie (still living at age 90 without descendants) and against the presently surviving children and descendants of J. W. M. Field. In the latter action judgment was entered quieting the appellees' title. The defendants in that action (other than Jessie herself) have appealed from that judgment, and that is one of the appeals before us. In the former action judgment was entered decreeing specific performance against Ashland. The appeal by Ashland from that judgment is the second of these two consolidated appeals.

The primary issue on both appeals is whether the trustee's 1945 conveyance was valid. For the reasons hereinafter stated we are holding that it was void.

In J. W. M. Field's will he left a one-sixth undivided interest to each of his two daughters, on these terms:

"* * * but as to my daughters, Mary Belle Rudd and Jessie Deane Field, their interests are to them respectively for life with remainder to their children, the shares to them in this form being to secure them from their own or the improvidence of their husbands, putting the principal beyond their control and subject only to the control of the Chancellor for the purposes of sale or exchange. The Chancellor to secure the proceeds of such sale by a reinvestment in other property or good securities to be held to the same uses. In the event that either one of my said daughters should die without leaving children, the share of the one so dying is to go to my surviving children and their descendants."

In 1906, in a partition suit, the lands devised by J. W. M. Field's will were partitioned among the devisees. Two tracts, one of which is the one here in controversy, were conveyed to Jessie with remainders as per the will. In that action, at *Jessie's request* (apparently made because she had entered a convent) the circuit court appointed a trust company as trustee for Jessie "to take charge of and represent her interest." Subsequently, in 1932, the *county* court, again at Jessie's request, appointed Kentucky Title and Trust Company of Louisville as successor trustee.

In 1945, in an *ex parte* proceeding in the circuit court in which no one having any interest in the land was made a party, a proposed *private* sale of the land to one C. O. Evans was approved and the Kentucky Title and Trust Company was authorized to, and did, convey the land to Evans (who later conveyed it to the appellees).[1]

■ In our opinion the crux of this case is in the interpretation of that part of J. W. M. Field's will which provided that the

---

1. The sale price was $6,500, which amount, by investment and reinvestment in securities, had increased to $28,000 as of the time of bringing the instant actions.

property be "subject only to the control of the Chancellor for the purposes of sale or exchange. The Chancellor to secure the proceeds of such sale by a reinvestment in other property or good securities to be held to the same uses." We think the only reasonable interpretation of this language is that any sale or exchange of the property must be *judicially* approved; that is, approved in a judicial *adversary proceeding*.

■ The parties argue at length as to whether the will created any kind of trust for which a trustee was to be appointed; as to whether the Kentucky Title and Trust Company was a trustee, at the most, only for Jessie's life estate; and as to whether Jessie herself might be considered a trustee for the remaindermen with the trust company being treated as merely an agent. In our opinion this argument all is irrelevant. Even if we assume that the will created a trust and contemplated a trustee, we think the will makes it clear that the trustee could not sell without judicial approval.

[3] The firmly-established rule is that in the absence of express or clearly implied authority conferred by the instrument creating the trust, a trustee has no power of sale without obtaining an order of sale from a *court of equity* (not a judge as an individual). See 90 C.J.S. Trusts § 287 a, pp. 417, 418; 54 Am.Jur., Trusts, § 433, p. 344; Wachs v. Security Trust Co., 287 Ky. 303, 152 S.W.2d 969. In the case before us, there is no need to resort to that general rule, because the will itself requires court approval of a sale.

■ Another equally well-established rule of common law is that on an application for court approval of a sale, beneficiaries must be made *parties*, although in a proper case virtual representation of those who do not have *present* interests will suffice. 90 C.J.S. Trusts § 292 b, p. 443; 54 Am. Jur., Trusts, § 447, p. 354; Bogert, Trusts & Trustees, Second Edition, § 742, p. 585. And of course, under our *statutes* dealing with property held under an express trust, the requirement of KRS 389.035 is that "all persons having a present or vested interest" be made parties, and of KRS 386.-090 that "all persons in being having an interest in the property" be made parties. The appellees maintain that Currey's Guardian v. Monsch's Guardian, Ky., 104 S.W. 313, is authority for the proposition that a trustee, where the will conditions the power of sale on obtaining court approval, is not required to follow *statutory* procedure. So it is, but it is not authority for the proposition that *ex parte* court approval is enough. In fact, the will in that case required "application to the chancery court for a decree" and the trustee did bring an adversary proceeding in which all persons having any interest in the property were made defendants.

■ The appellees argue that the 1945 proceeding could be treated as one brought under KRS 389.035, in which it was necessary only to make the *life tenant* a party because there were no vested remainder interests outstanding; and that although Jessie, the life tenant, was not made a party this was not fatal, because she is *estopped* from attacking the transaction, having received the benefits of it over the years. This argument is not valid because the only basis on which the rights of a contingent remainderman may be sold, without his having been made a party, is that he is *virtually represented* by the life tenant in the proceeding. If the life tenant is not made a party, *nobody* represents the remainderman; and the fact that the life tenant may have enjoyed the *income* from the proceeds of the sale is no basis for estopping the remainderman.

■ Perhaps it could be (but is not) argued that J. W. M. Field's will intended that the circuit court itself should act as a trustee, as such was given unrestricted power of sale. We believe that such argument would not be sound. It would be particularly inappropriate for a circuit court to act as trustee of a private trust

which might be amenable to supervision by the *county court* and might have occasion to come in litigation in the circuit court. The inappropriateness of a public official's serving ex officio as a trustee of a private trust is recognized in court decisions holding that a settlor's designation of a certain public officer as trustee will be construed as a designation of the individual person then holding the office. See 90 C.J.S. Trusts § 204, p. 133. Bogert recognizes that certain officers may have such a relationship to the administration of trusts as to be absolutely disqualified to serve as such. Bogert, Trusts and Trustees, Second Edition, Sec. 129, p. 632. Regardless of the question of eligibility, we do not find in the will any indication of intent that the "Chancellor" was to enter the picture other than as the presiding officer of the court in a judicial-approval procedure. And it appears that no one else having to do with the will in the last 65 years ever found any such indication.

■ It is our conclusion that the 1945 sale was *void*. This being so, the order approving the sale could be collaterally attacked (as it was in these actions, contrary to the contention of the appellees that the appellants were seeking a *reversal* of the 1945 order by a belated attempt to *appeal*).

■ Our conclusion completely disposes of all of the issues in Field, et al. v. Lloyd, et al. It disposes of all of the issues in Ashland Oil & Refining Company v. Lloyd, et al., except the issue of title by adverse possession. In his findings of fact in that case the trial court found that the Lloyds had acquired good title by adverse possession, and it appears that this finding may have been one of the grounds on which he based his decree of specific performance. It is our opinion, however, that the finding is clearly erroneous for several reasons, chief among which is that the 15-year adverse-possession limitation period could not run against the *remaindermen* until they became entitled to possession, which event has not yet occurred (because

of Jessie's longevity). See McDonald v. Burke, Ky., 288 S.W.2d 363.

The judgment in the Ashland case is reversed with directions to enter judgment dismissing the action. The judgment in the Field case is reversed to the extent that it quiets the title of the appellee against the appellants in that case, with directions for further proceedings in conformity with this opinion, including a determination of such issue of restitution as may arise in the adjudication of the appellants' counterclaim asking that title be quieted in them.

All concur.